Guillermo **ROSARIO NEVAREZ**, et al.,
Plaintiffs, Appellees,

v.

Honorable Jaime **TORRES GAZTAMBIDE**, et al., Defendants, Appellants.

No. 86–1655.

United States Court of Appeals,
First Circuit.

Submitted April 9, 1987.

Decided June 5, 1987.

Jose A. Sanchez Alvarez, Hector Rivera Cruz, Secretary of Justice, and Ramirez & Ramirez, Hato Rey, P.R., on brief, for defendants, appellants.

Frank Rodriguez Garcia, Ponce, P.R., on brief, for plaintiff, appellee Guillermo Rosario Nevarez.

Before CAMPBELL, Chief Judge, COFFIN and TORRUELLA, Circuit Judges.

COFFIN, Circuit Judge.

This appeal marks our first opportunity to review a decision on the merits reinstating and awarding damages to a public official allegedly dismissed for political reasons in the wake of the most recent Puerto Rico gubernatorial election. Prior cases dealing with similar dismissals following the electoral victory by the Partido Popular Democratico ("PPD") over the Partido Nuevo Progresista ("PNP") in 1984 have come before us either on appeal from the issuance of a preliminary injunction,[1] or on interlocutory appeal from a denial of summary judgment based on qualified immunity.[2] In fact, we have already reviewed and reversed a preliminary injunction reinstat-

ing an official to a position identical to the one at issue here. *Collazo Rivera v. Torres Gaztambide,* 812 F.2d 258 (1st Cir. 1987).

## I.

Plaintiff-appellee Guillermo Rosario Nevarez, a member of the defeated PNP, formerly served as the Arecibo Regional Director of the Rural Housing Administration ("RHA"), an agency within the Puerto Rico Department of Housing.[3] On March 18, 1985, approximately two months after the PDP assumed power, Rosario was demoted to a career position within the RHA by Jaime Torres Gaztambide, the newly appointed Secretary of Housing. Rosario responded by commencing an action against both Torres and Cosme Hernandez Silva, the Executive Director of the RHA,[4] alleging that he was demoted solely due to his political affiliation with the PNP in violation of his First and Fourteenth Amendment rights. Following a five-day bench trial, the district court entered judgment in Rosario's favor, ordering that he be reinstated to the position of Regional Director and awarded compensatory damages in the amount of $27,596 and punitive damages totalling $15,000. 633 F.Supp. 287 (1986).

Defendants appeal this decision, contending that Rosario was employed in a position for which "party affiliation is an appropriate requirement," *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980), and alternatively, that the doctrine of qualified immunity bars Rosario from recovering damages even if his

---

1. *See, e.g., Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236 (1st Cir.1986) (en banc), *cert. denied,* —— U.S. ——, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987); *De Choudens v. Government Development Bank,* 801 F.2d 5 (1st Cir.1986) (en banc), *cert. denied,* —— U.S. ——, 107 S.Ct.1886, 95 L.Ed.2d 494 (1987).

2. *See, e.g., Perez Quintana v. Gracia Anselmi,* 817 F.2d 891 (1st Cir.1987); *Raffucci Alvarado v. Zayas,* 816 F.2d 818 (1st Cir.1987); *Vazquez Rios v. Colon,* 819 F.2d 319 (1st Cir.1987); *Rosado v. Zayas,* 813 F.2d 1263 (1st Cir.1987); *Mendez-Palou v. Rohena-Betancourt,* 813 F.2d 1255 (1st Cir.1987); *Monge-Vazquez v. Rohena-Betancourt,* 813 F.2d 22 (1st Cir.1987); *Cheveras*

*Pacheco v. Rivera Gonzalez,* 809 F.2d 125 (1st Cir.1987); *Rodriguez Rodriguez v. Munoz Munoz,* 808 F.2d 138 (1st Cir.1986); *De Abadia v. Izquierdo Mora,* 792 F.2d 1187 (1st Cir.1986).

3. The position of RHA Regional Director is classified as a position of trust or confidence under the Puerto Rico Public Service Personnel Act. P.R. Laws Ann. tit. 3, § 1350. *See Collazo Rivera,* 812 F.2d at 262.

4. Ariel Nazario, Torres' successor as Secretary of Housing, is also a party to this action for the purposes of injunctive relief. *See* Fed.R.Civ.P. 25(d).

demotion was improper, *see Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Defendants' first argument is premised on *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236 (1st Cir.1986) (en banc), *cert. denied*, —— U.S. ——, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987), in which we set forth the two fundamental criteria, derived from *Branti*, against which the propriety of dismissals based on party affiliation must be measured. *See id.* at 241–42 (discussing the two criteria).[5] Application of the *Jimenez Fuentes* test, they assert, demonstrates that the position of RHA Regional Director does not fall within the class of public officials protected against politically motivated dismissal by the Constitution. Because we agree and reverse the judgment of the district court on this ground, we need not consider whether defendants were shielded by the doctrine of qualified immunity.

## II.

In *Collazo Rivera*, 812 F.2d at 258, we had our first opportunity to assess the position of RHA Regional Director in light of our en banc decision in *Jimenez Fuentes*. We determined that the plaintiff in that case, who had previously held the post of RHA Regional Director for the Utuado District, had not demonstrated a likelihood of success on the merits of his constitutional claim because his former position satisfied both prongs of the *Jimenez Fuentes* test. First, it was "substantially related to partisan political concerns," *id.* at 261, and second, it involved policymaking, access to confidential information, and communicative functions "for which party loyalty is an appropriate requirement," *id.* at 261–62. Consequently, we held that the district court had abused its discretion in issuing a preliminary injunction ordering the Secretary of Housing to reinstate the plaintiff.

The case presently before us differs from *Collazo Rivera* only in the sense that

it comes to us as a final judgment on the merits after a full trial. Despite the strong similarities between the cases, this procedural difference is potentially relevant because the preliminary injunction in *Collazo Rivera* necessarily limited our review to the plaintiff's "likelihood of success" on the merits at trial. *See id.* at 259 (citing *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981)). For this reason, "our 'conclusions' and 'holdings' as to the merits of the issue presented [had] to be understood as statements as to probable outcomes" based on the limited record before us, and not as a clear-cut ruling that an RHA Regional Director is vulnerable to dismissal based on party affiliation. *Jimenez Fuentes*, 807 F.2d at 239, *quoted in Collazo Rivera*, 812 F.2d at 259. Nevertheless, defendant argues persuasively that *Collazo Rivera* controls the disposition of the instant case.

As in *Collazo Rivera*, we must assess the merits of the instant case by scrutinizing the district court's conclusion—that Rosario enjoyed constitutional protection against politically motivated dismissal—in light of both criteria established in *Jimenez Fuentes*. We begin by noting, however, that Rosario concedes the "threshold inquiry" of the *Jimenez Fuentes* test, agreeing that the position of RHA Regional Director relates to partisan political interests or concerns. Appellee's Brief at 45. This concession dovetails with our prediction of the probable result in *Collazo Rivera* and makes considerable sense given the RHA's significant political role in administering rural housing and agrarian reform programs. *Collazo Rivera*, 812 F.2d at 260–61.

The only remaining issue, therefore, is whether the position of Regional Director encompasses policymaking, access to confidential information, official communication, or other functions sufficient to satisfy the *Branti* exception governing positions for which party affiliation is an appropriate

---

5. The district court did not have the benefit of our en banc opinion at the time it decided this case. Nevertheless, we must assess the court's conclusions of law in light of the standards set forth in that opinion.

requirement. It is this second issue that Rosario contests, arguing that the trial court was correct in finding that party affiliation was not an appropriate requirement for the Regional Director position because the power and authority of this "managerial" position "was insufficient to frustrate the policies of the government." Based on our reasoning in *Collazo Rivera*, however, we find that the evidence before the district court regarding the "inherent powers" of the position did not warrant a determination that the position was constitutionally protected against dismissal based on party affiliation.

The only pertinent evidence adduced at trial concerning the "inherent powers" of the Regional Director position was the information contained in the official classification questionnaire (OP–16) prepared by the Central Office of Personnel Administration. The actual job description introduced at trial was originally prepared for Rosario's predecessor, Eulalio Romero Arroyo, but both parties at trial accepted its contents as an accurate statement of the Regional Director's inherent powers.[6] The court, moreover, referred to the classification questionnaire in its opinion, using the list of duties as support for the proposition that CRUV[7] Regional Directors are the "functional equivalent" of RHA Regional Directors and even reprinting the list as an appendix to its opinion.[8]

Significantly, the classification questionnaire considered by the district court is essentially identical to the job description reprinted in the *Collazo Rivera* opinion, 812 F.2d at 261. The only slight differences are that (1) the *Collazo Rivera* list does not mention the Regional Director's duty to "participate[ ] in the selection and recruiting of new personnel at the district level;" and (2) the list before the district court in this case does not contain the eighteenth duty listed in *Collazo Rivera*, 812 F.2d at 261–62.[9] We do not believe that these differences demand a result different from that reached in *Collazo Rivera*. On the one hand, the presence of an additional, arguably policymaking, function in the instant case makes it an even stronger case for the defendants than *Collazo Rivera*. On the other hand, as we recognized in *Collazo Rivera*, the absence of item eighteen from the list of job duties described in that opinion would not swing the case in the plaintiff's favor. *Id.* at 262 n. 3.

We therefore feel bound to abide by our conclusion in *Collazo Rivera* that "[t]he Regional Director's duties offer considerable opportunity either to effectuate or to hinder the implementation of RHA programs and policies," *id.* at 262, making it proper for the Secretary of Housing to require party loyalty of the person responsible for implementing the many functions assigned to the Regional Director by the official classification questionnaire. Accordingly, we hold that the district court

---

**6.** Rosario seeks to have the classification questionnaire qualified by Romero's testimony at trial describing the duties he *actually* performed during his tenure as RHA Regional Director. This testimony is irrelevant, however, because our analysis must focus upon the "inherent powers" of the position—that is, those described in the job description—not the duties actually performed. *See Collazo Rivera*, 812 F.2d at 261 (citing *De Abadia v. Izquierdo Mora*, 792 F.2d at 1192). There was no suggestion that the position underwent significant changes when it passed from Romero to Rosario, nor was there any suggestion that Rosario's powers differed from Romero's in any significant way. *See Collazo Rivera*, 812 F.2d at 261 (describing duties of another RHA Regional Director serving simultaneously with Rosario).

**7.** Corporacion de Renovacion Urbana y Vivienda, the sister agency of the RHA responsible for urban housing and discussed in detail in *Jimenez Fuentes*, 807 F.2d at 242–46.

**8.** We have said on more than one occasion that, when available, an official document providing an authoritative list of a position's inherent powers and duties is an invaluable aid in determining whether the employee holding that position is entitled to constitutional protection against politically motivated dismissal. *See Mendez-Palou v. Rohena-Betancourt*, 813 F.2d 1255, 1260 (1st Cir.1987); *Jimenez Fuentes*, 807 F.2d at 243–44.

**9.** "Participating in a direct or delegated manner in the enactment of program rules and regulations, including 'the enactment, modification and interpretation of [program] functions or in the direct counseling of the [RHA] head influencing the public policy.'"

erred in not ruling that " 'party affiliation is an appropriate requirement for the effective performance' of the [RHA] Regional Director position." *Id.* at 262 (quoting *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295). *The judgment of the district court is reversed.*

TORRUELLA, Circuit Judge (dissenting).

For the reasons stated in my dissent in *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236 (1st Cir.1986) (en banc), I respectfully dissent.