Hector L. **BERBERENA ROSADO;**
**Justo Jose Soto Lasalle;**
**Francisco Soto Colon**

v.

Rafael **CORDERO SANTIAGO, individually and as Administrator of the Right of Employment Administration; Claudio Lopez, individually and as Regional Director of Aguadilla for the Right of Employment Administration; Cruz Merced Vazquez, individually and as Special Assistant of the Administrator of the Right of Employment Administration; Felix E. Latorre, individually and as Regional Director of Guayama for the Right of Employment Administration.**

Civ. No. 86–1175 (JP).

United States District Court,
D. Puerto Rico.

June 19, 1987.

Miguel Giménez Muñoz, Río Piedras, P.R., for plaintiffs.

Antonio Fiol Matta, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

Plaintiffs Héctor L. Berberena, Justo J. Soto LaSalle, and Francisco Soto Colón, brought this action for declaratory and injunctive relief, as well as damages and attorney's fees against Rafael Cordero Santiago, the Administrator of the Right to Work Administration (Administración del Derecho al Trabajo or ADT), Claudio López, the Aguadilla Regional Director of the ADT, Cruz Merced Vázquez, a Special Assistant to the ADT Administrator, and Félix E. LaTorre, the ADT Regional Director for Guayama. The case was filed pursuant to 42 U.S.C. section 1983, the first and fourteenth amendments to the United States Constitution, 3 L.P.R.A. section

1312, *et seq.*, and article II, section I, of the Constitution of the Commonwealth of Puerto Rico.

Plaintiffs allege that, as members of the New Progressive Party (NPP), they were discriminated against by defendants, members of the incoming Popular Democratic Party (PDP) administration, through plaintiffs' position reclassification or transfer within the ADT. Defendants counter, in part, that any effect on plaintiffs was part of an agency-wide reorganization unrelated to the political affiliation of plaintiffs.

This matter is before the Court on defendants' Motion for Summary Judgment.

## I. *The Standard for Summary Judgment*

Summary Judgment is proper only if the pleadings and other evidence in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In passing on a summary judgment motion, the Court must view the record and draw inferences in the light most favorable to the opposing party. *Kennedy v. Josephthal & Company*, 814 F.2d 798, 804 (1st Cir.1987); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). With these principles in mind, we now examine defendants' motion.

## II. *Qualified Immunity*

█ In actions brought under 42 U.S.C. section 1983, a defense of qualified immunity from liability for damages is available to state executive officers performing discretionary functions, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). On a motion for summary judgment, it is appropriate for a trial court to determine whether the law was clearly established at the time of the conduct at issue. *De Abadia v. Izquierdo Mora*, 792 F.2d 1187 (1st Cir.1986). We will examine whether

these norms were clearly established as to the two claims challenged in defendants' summary judgment motion.

### A. *First Amendment Claim*

Plaintiffs claim that the reorganization of ADT placed them in positions where the duties that their job descriptions described were not the duties they were actually assigned. The lack of work, it is averred, is part of a concerted effort to make plaintiffs so frustrated with their employment that they would leave the ADT of their own accord. The alleged reason for this concerted effort is political bias on the part of defendants.

At the time of plaintiffs' reclassification/transfer, the law was clearly established that public employees are protected by the first amendment guarantees of freedom of speech and association from being the subject of adverse personnel decisions solely because of political affiliation, unless political affiliation were an appropriate for the effective performance of the office involved. *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 367–68, 96 S.Ct. 2673, 2686–87, 49 L.Ed.2d 547 (1976). In *Branti* and *Elrod*, the Supreme Court recognized that in certain positions of public employment, where an employee's private political beliefs would interfere with the performance of his public duties, his first amendment rights could be required to yield to the state's vital interest in maintaining governmental effectiveness and efficiency. *Branti*, 455 U.S. at 517, 100 S.Ct. at 1294; *Elrod*, 427 U.S. at 366, 96 S.Ct. at 2686.

Defendants' motion for summary judgment did not address whether political affiliation was an appropriate requirement for plaintiffs' positions. The Court is mindful, however, that defendants' failure to make obvious arguments may not preclude the unnecessary prolongation of this case at the appellate level. *Rodríguez Rodríguez v. Muñoz Muñoz*, 808 F.2d 138, 140 (1st Cir.1986) *reversing* 603 F.Supp. 349 (D.P.R. 1985). Accordingly, we examine *sua sponte* whether political affiliation is an

appropriate requirement for plaintiff's position. *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 242 (1st Cir.1986) (en banc), *cert. denied,* —— U.S. ——, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). Our analysis is divided according to the positions occupied by the respective plaintiffs.

### 1. *Hector L. Berberena Rosado*

Plaintiff Berberena Rosado occupied the post of Regional Coordinator for the Humacao Region prior to his transfer to the post of Executive Officer I on July 16, 1985. Berberena was a career employee at the time of the transfer. His job description, as contained on Form OP–16 from the Office of Personnel Administration, listed the following duties:

a) to assist the Regional Director in the planning, coordination, management and supervision of the operational and management activities of the Training and Private Sector Incentives and Learning sections.

b) to transmit the instructions received from the Regional Director to the personnel under his/her supervision, related to the tasks performed.

c) to keep the Regional Director informed as to the special work and studies performed in the sections, following the same up and submitting the pertinent recommendations when necessary.

d) to draft correspondence to be signed by the Regional Director.

e) to render written and verbal reports on the work performed, achievements, projections and difficulties found, and to submit recommendations thereto.

f) to represent the Regional Director at official meetings or activities within or without the Agency, when so required.

g) to attend the persons that visit the Office requesting some information or service.

h) to consult with the Regional Director and/or Regional Deputy Director on all those problems found during the development of the operational activities and to get counsel and guidelines on the application of applicable norms and procedures and on the implementation of the programs and activities under his/her supervision.

i) to check and sign the attendance of the employees under his/her supervision.

j) to perform other similar duties as assigned.

■ The rule in this circuit is that there is "no clearly established constitutional protection against patronage dismissal for those individuals whose positions potentially [concern] matters of partisan political interest and [involve] at least a modicum of policymaking responsibility, access to confidential information, or official communication." *Mendez Palou v. Rohena Betancourt,* 813 F.2d 1255, 1259 (1st Cir.1987).

The incoming PDP Administration reorganized the agency, purportedly to improve the provision of services by the agency to the citizenry of Puerto Rico. The ADT's function is to develop employment opportunities in the public and private sectors. 29 L.P.R.A. § 1103. The unemployment rate, as well as the nature and quality of government efforts to control it are always areas of public concern and debate. As the Seventh Circuit noted in *Tomczak v. City of Chicago,* 765 F.2d 633, 641 (7th Cir.1985), "[e]lections often turn on the success or failure of the incumbent to provide ... services." This is certainly true when dealing with unemployment.

■ We concentrate our analysis on the main tasks assigned to Berberena:

"to assist;"

"to transmit the instructions received;"

"to keep the Regional Director informed ... and submit the pertinent recommendations when necessary;"

"to draft correspondence;"

"to render ... reports ... and to submit recommendations thereto;"

"to represent the Regional Director ... when so required;"

"to attend the persons that visit the office;"

"to consult with the Regional Director ... and to get counsel and guidelines;"

"to check and sign the attendance of the employees under his/her supervision;" and

"to perform other similar duties as assigned."

The Court must decide whether these tasks rise to the level of "a modicum of policymaking responsibility." We are of the considered opinion that they do not. Berberena acts as a conduit for instructions and orders for the Regional Director. The Court is fully aware that Regional Directors are regarded as positions that potentially concern matters of partisan political interest, involve policymaking responsibility, and that therefore political affiliation may be an appropriate requirement for holding that position. *E.g., Rosario Nevarez v. Torres Gaztambide,* 820 F.2d 525 (1st Cir.1987) (Rural Housing Authority); *Pérez Quintana v. Gracia Anselmi,* 817 F.2d 891 (1st Cir.1987) (ADT); *Rosado v. Zayas,* 813 F.2d 1263 (1st Cir.1987) (Rural Housing Authority); *Collazo Rivera v. Torres Gaztambide,* 812 F.2d 258 (1st Cir. 1987) (Rural Housing Authority); *Jiménez Fuentes,* 807 F.2d 236 (1st Cir.1986) (CRUV). The same, however, simply cannot be said of every employee that comes in contact with a political appointee. Berberena, under the OP–16, acts at the behest of and under the supervision of the Regional Director. This is not a position with "considerable opportunity to effectuate or to hinder the implementation of . . . programs and policies." *Contra Rosario Nevárez,* 820 F.2d at 528, *quoting Collazo Rivera,* 812 F.2d at 262. Berberena's position is more akin to the "technical, professional" position that, although substantive, is too far removed from the machinations of partisan political concern to require political affiliation as a condition of employment. *De Choudens v. Government Development Bank,* 801 F.2d 5, 9–10 (1st Cir.1986).

Defendant's motion for summary judgment on the basis of qualified immunity as to plaintiff Berberena's first amendment claim is DENIED.

### 2. *Francisco Soto Colón*

The duties of this plaintiff are identical to Berberena's. The only difference is that Soto Colón was Regional Coordinator for the Guayama Region, while Berberena was Regional Coordinator for the Humacao Re-gion. Our analysis is likewise identical. For the reasons stated in section II.A.1. *supra,* defendant's motion for summary judgment on the basis of qualified immunity as to plaintiff Soto Colón on the first amendment claim is DENIED.

### 3. *Justo Soto Lasalle*

Plaintiff Soto Lasalle occupied the post of Human Resources Technician IV in the Training Program Section at the Aguadilla Regional Office prior to his transfer to the Learning Section on April 8, 1986. Soto Lasalle was a career employee at the time of his transfer. His job description as contained on Form OP–16 from the Office of Personnel Administration listed the following duties:

a) to plan, manage and assess the work of the technical and clerical personnel of Human Resources of lower hierarchy attached to the Training Program section.

b) to help in the formulation of norms in order to improve the rendering of service.

c) to cooperate with the supervisor in the supervision and coordination of the activities in the technical aspect as well as in the management aspect.

d) to assess the progress of each activity so that they be in harmony with the norms established in the contracts and to make the necessary recommendations thereto.

e) to provide technical counseling to the participants in the marketing and promotion areas leading to self-employment.

f) to counsel and advise participants in obtaining and filling loan applications.

g) to instruct the Technicians under his/her supervision as to new recommended procedures, concepts or techniques.

h) to prepare and analyze along with the immediate supervisor the development of proposals in order to assure that the same be in agreement with the Agency's established norms and goals.

i) to perform any other similar tasks as required.

Soto Lasalle's immediate supervisor is a Regional Coordinator/Executive Officer. Plaintiff makes some recommendations to his supervisor. It is evident, however, that these recommendations simply do not rise to the level of policymaking responsibility. Neither is there any indication of access to any form of confidential information nor the responsibility for officially communicating. The Court is at a loss to imagine how any of plaintiffs' inherent position powers could potentially concern matters of partisan political concerns. Accordingly, defendant's motion for summary judgment as to qualified immunity as to plaintiff Soto Lasalle's first amendment claim is DENIED.

### B. *Fourteenth Amendment Due Process Claim*

■ Plaintiffs' complaint apparently claims that the reorganization/transfers deprived them of property, *i.e.*, their original positions, without due process of law. Plaintiffs' property interest in their public employment, if any, is defined by statute. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494, 501 (1985); *see also Brock v. Roadway Express*, — U.S. —, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987). Plaintiffs here are all "career" employees. Under the Puerto Rico Public Service Personnel Act of 1975, as amended, career employees are selected strictly on merit and can be removed only for cause. 3 L.P.R.A. § 1336(4) (Supp.1985); *Jiménez Fuentes*, 807 F.2d at 246. The statute authorizes transfers, however, when such transfers "answer to the needs of the service as established by the regulations." 3 L.P.R.A. section 1334(5) (Supp.1985). Such transfers, however, "may not be used as a disciplinary measure nor shall they be made arbitrarily." 3 L.P.R.A. § 1334(5) (Supp.1985).

In the deluge of papers supporting defendants' summary judgment motion, much was made of the reorganization that the agency underwent. Defendants showed that plaintiffs Berberena and Soto Colón, former "Regional Coordinators," would now be sharing responsibilities with another person of the same newly created rank, "Executive Officer I." Plaintiff Soto LaSalle, in addition to changed duties, was moved to another section of the agency. A significant change in the operations of an office such as the division of responsibilities and shared reporting requirements to the same supervisor here, can only be termed functionally a transfer. For the purposes of this discussion, we shall treat Berberena, Soto Colón, and Soto LaSalle as all having been transferred within the meaning of the act.

Plaintiffs therefore had a property right in continued employment, although they could be transferred. Plaintiffs also had a right, pursuant to ADT regulations, to a hearing within fifteen days of notice of any reclassification. The result of the hearing could be appealled by the employee. Although *Loudermill* requires such notice and hearing before termination, 470 U.S. at 542, 105 S.Ct. at 1493, 84 L.Ed.2d at 503, a reclassification with continued employment would not appear to trigger a pre-action hearing. Minimal due process standards seem to have been met at this point.

Plaintiffs have alleged, however, that the personnel action was politically motivated. Any motivation for a personnel action that falls outside of the legitimate interests of the agency must be termed "arbitrary." At the time of the transfers, however, and as noted above, it was not clearly established that political affiliation was a legitimate interest of the agency as to the positions held by plaintiffs Berberena and Soto Colón. Accordingly, plaintiffs Berberena and Soto Colón have claimed that their transfers were arbitrary and violative of the statute.

With regard to plaintiff Soto Lasalle, the Court has already analyzed, it was not clearly established at the time of Soto Lasalle's transfer that political affiliation was a legitimate interest interest of the agency in making personnel decisions concerning this plaintiff. Soto Lasalle, too, has claimed this transfer was arbitrary and violative of the statute.

Whether these violations would actually constitute a violation of procedural due process, however, is beyond the scope of a summary judgment motion based on qualified immunity. We cannot " 'consider the correctness of the plaintiff's facts, nor even determine whether the plaintiff's allegations actually state a claim,' " but limit our inquiry to " 'whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions.' " *Bonitz v. Fair,* 804 F.2d 164, 166 (1st Cir.1986), *quoting Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 2816 & n. 9, 86 L.Ed.2d 411 (1985); *see also Cheveras Pacheco v. Rivera González,* 809 F.2d 125, 127 (1st Cir.1987).

The qualified immunity question as to this claim is whether it was clearly established at the time of the reorganization that any career employee transferred was entitled to procedural due process under the fourteenth amendment. *Loudermill* and the personnel law of Puerto Rico answer that career employees were so entitled. An absence of procedural due process because of arbitrariness, *i.e.,* political animus, in the reorganization, is the sort of violation of a clearly established norm that a reasonable person would have known was violative, and the sort of violation that qualified immunity does not protect against. Defendants' motion for summary judgment on the basis of qualified immunity as to plaintiffs' fourteenth amendment claims is DENIED.

Defendants' request for a stay of these proceedings is DENIED. *Cancel Lugo v. Alvarado,* 819 F.2d 5 (1st Cir.1987).

### III. *Pretrial Order*

The parties have submitted a proposed Pretrial Order. Plaintiffs' list of potential witnesses does not include a description of the subject matter of the witnesses' testimony. This is in violation of the Court's Initial Scheduling Order in this case. The Court ORDERS plaintiffs to COMPLY with our previous Order on or before June 23, 1987. Failure to comply at this juncture will result in the Court striking plaintiffs' witnesses. Fed.R.Civ.P. 37(b)(2)(B). The Court also notes that the parties have attempted to reserve to themselves the sole authority to announce additional witnesses. The Court ORDERS that expansion of the witness list shall not be allowed except upon motion for good cause shown and where the opposing party is not unfairly prejudiced.

With these modifications, the proposed Pretrial Order is APPROVED. The Clerk shall file and docket the same.

IT IS SO ORDERED.