Maria Magdalena ALAMO HERNANDEZ, Plaintiff,

v.

Dario HERNANDEZ, et al., Defendants.

Civ. No. 86–0037 (RLA).

United States District Court, D. Puerto Rico.

July 9, 1987.

Alberto J. Pérez Hernández, Hato Rey, P.R., for plaintiff.

José A. Sánchez Alvarez, Ramirez & Ramirez, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

The present case is an action pursuant to 42 U.S.C. § 1983 for damages and equitable relief. Plaintiff alleges that she was improperly demoted from "Executive Secretary" to "Secretary IV" and transferred from the Commonwealth Ports Authority to the Commonwealth Highway Authority solely because of her affiliation to the New Progressive Party.[1] Plaintiff contends that this job transfer violated her first and fourteenth amendment constitutional rights.

Before the Court is defendants' motion for summary judgment based on qualified immunity and plaintiff's opposition thereto.[2] We need not, however, consider defendants' qualified immunity defense since we will, *sua sponte*, summarily dismiss the complaint pursuant to Fed.R.Civ.P. 56. The record as a whole, including an approved pretrial order, makes it apparent that under no set of conceivable facts could plaintiff, given the nature of her position, prove that she enjoyed constitutional protection against politically motivated dismissal.

Though we have given plaintiff every favorable inference we can muster from the record and we take her factual pleadings as true, the weight of the statutory and case law against her make it a forgone conclusion, as a matter of law, that plaintiff does not have an actionable claim. Thus it would be futile, wasteful and unfair to *all* parties concerned, including plaintiff,

to proceed to trial with the present case. In other words, plaintiff has failed to make sufficient showing on an essential element of her case with respect to which she has the burden of proof. This necessarily renders all other facts immaterial, and therefore, summary judgment is appropriate since the present case lacks a genuine, triable issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Plaintiff's claim of improper demotion is actionable only if her job was one for which political affiliation is not a proper criterion. Therefore, the controlling issue before us is whether or not the position of Executive Secretary to the Executive Director of the Commonwealth Ports Authority, in light of the responsibilities inherent in that position, is one that is protected from patronage demotion under the *Branti* line of cases. *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980). (An individual employed by the Government is protected from a politically motivated discharge only if "a party affiliation is /not/ an appropriate requirement for the effective performance" of his or her job.)

The First Circuit Court of Appeals has in the last year created a formidable body of caselaw applying the *Elrod*[3] and *Branti* constitutional requirements to the fierce and expansive arena of patronage dismissals in Puerto Rico. With one very recent exception, all of the First Circuit's cases have dealt either with appeals from district courts' grants of preliminary injunctions or denials of summary judgments based on

---

1. Defendants, on the other hand, belong to the Popular Democratic Party. One of the fundamental differences between the two parties is that the New Progressive Party advocates statehood while the Popular Democratic Party prefers autonomy under a commonwealth status.

2. Plaintiff's opposition, filed upon order of the Court on February 5, 1987, was entitled "Opposition to Motion for Summary Judgment and Cross-Motion for Summary Judgment" but the only statement referring to the so-called cross-motion was a bare prayer that defendants' liability be summarily established. We, therefore, deny the cross-motion for lack of merit and for failure to comply with the requirements of local Rule 311.12. We note, however, that plaintiff's

motions evidence that she was on notice that summary judgment might be entered against her and that she had a reasonable opportunity to present all the relevant material necessary to oppose such an action.

3. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) was the seminal case whereby the Supreme Court substantially changed the law to extend constitutional protection against patronage dismissal to most public employees. The only exception made was for the "underlings" of elected officials employed in "policymaking" or "confidential" positions. These last, the Court said, must yield their first amendment rights to the greater interest of preserving representative government.

qualified immunity. But whatever the particular posture of the case at hand, be it at an intermediate stage or fully tried on the merits, the controlling test developed by the First Circuit to determine whether a patronage dismissal claim is actionable under the *Elrod-Branti* line of cases is the same. That test was first fully elucidated in *Jiménez Fuentes v. Torres-Gaztambide*, 803 F.2d 1, 5–6 (1st Cir.1986) and it consists of two parts. The first inquiry is whether the agency employing the plaintiff handled matters potentially subject to partisan political differences. This is the "screening" and less significant part of the test in that it is simply designed to "cut off from further consideration those positions involving matters devoid of partisan concerns, such as the 'proper flow of work' in an agency, *see DeChoudens v. Gov. Develop. Bank of P.R.*, 801 F.2d 5, 10 (1st Cir.1986) (en banc), or the preferred accounting method or computer system". The recent decisions of the First Circuit have shown that there are very few, so far only one—*DeChoudens, supra,* itself, government positions that are so technocratic that they can be considered "devoid of partisan concerns".

In the present case, it is clear from a review of the enabling statute of the Puerto Rico Ports Authority, the agency of concern here, that it is an important governmental entity which implements sensitive governmental policies themselves potentially subject to partisan political differences.

> The purposes of the authority shall be to develop and improve, own, operate, and manage any and all types of transportation facilities and air marine services in, to, and from the Commonwealth of Puerto Rico and to make available the benefits thereof in the widest economic manner, thereby promoting the general welfare and increasing commerce and prosperity ..."

23 L.P.R.A. § 336.

For an island like Puerto Rico, the Ports Authority is exceptionally important because in its management and development of the Island's airports and ports the agency maintains Puerto Rico's primary physical links to the rest of the world. These services are at least as important and sensitive as the water and snow removal services mentioned in *Tomczak v. The City of Chicago,* 765 F.2d 633 (7th Cir.1985) and cited favorably by the First Circuit.

The second, and more substantial, prong of the *Jiménez Fuentes* test is how plaintiff's position influenced the resolution of the partisan policymaking process of the agency. The focus here is not only on whether plaintiff's former job can be "measured solely by strictly technical or professional criteria", *Jiménez Fuentes,* 803 F.2d at 6, which would make the job nonpartisan in nature; but also whether plaintiff's position, being "confidential" rather than "policymaker", put her in the unprotected ambit of "public employees who occupy positions of such unusually intimate propinquity relative to government leaders that, despite their non-involvement with partisanship and policymaking, political loyalty could be deemed an appropriate requirement of the job for purposes of muzzling the *Elrod-Branti* watchdog." *Vázquez Ríos v. Hernandez Colón,* 819 F.2d 319, 324 (1st Cir. 1987).

In *Vázquez Ríos,* on issues related to the doctrine of qualified immunity, the First Circuit held that five of the seven plaintiffs who were dismissed as domestic employees (maids and waiters) of the Governor's mansion were protected against patronage dismissals by a clearly established constitutional right. (Not so, said the Court, for the two remaining plaintiffs—an "Executive Assistant" in the Governor's press office and an *"Executive Secretary III"* in the Governor's Office of Cultural Affairs).

In *Vázquez Ríos* the First Circuit ventured into the "dearth of reasoned analysis as to the nature and extent of the 'confidential employee' exception", *id.* at 323, and emerged with an analytical gem in the form of a clear and well articulated standard. When determining whether a confidential position is protected or not, now says the First Circuit, we must carefully distinguish between "those employees whose jobs *intrinsically* place them in a confidential position relative either to policymakers or the policymaking process, and

those whose jobs merely permit an *incidental* exposure to sensitive material that is in fact beyond the bounds of their employment." *Id.* at 325. (Emphasis in original.) In other words, mere access to confidential information is not enough. The difference is whether that access is part of a job that has an ongoing and intimate proximity to a policymaker as opposed to those persons who have no *authorized* access to confidential information though they may work, as custodial employees do, in an area where such information can be found.

Interestingly, the *Vázquez Ríos* Court fleshed out this newly articulated analytical test with examples that bear heavily on the present case. It first cited *Soderbeck v. Burnett County, Wis.*, 752 F.2d 285, 288 (7th Cir.1985) for the proposition that "policymakers should not be 'forced to keep political enemies as their *confidential secretaries*'" (Emphasis added.) *Vázquez Ríos*, 819 F.2d at 324. It then hammered this figurative point home when it exemplified its intrinsic versus incidental test by saying: "political advisers and *personal secretaries* are entrusted to work with the covert material to which they are privy. Domestics, by contrast, have no legitimate part to play on the political stage ..." *Id.* at 325.

Finally, in a more substantial mode, the First Circuit found, after analyzing an uncontested job description, that the position of Executive Secretary III at issue, actually a job as a "cultural attaché", was not one clearly protected by the Constitution.

Our purpose here is not to categorically equate the Executive Secretary position in *Vázquez Ríos*, nor the examples regarding secretaries used there, to the Executive Secretary position at issue in the present case. In that regard we are quite mindful that it is the nature of the position and not the title that counts. We mean only to show that regarding the confidential employee exception there is a strong presumption that a personal secretary to a policymaker is intrinsically linked to the policymaking process for purposes of the second part of the *Jiménez Fuentes* test and as such dismissals from that position cannot be facilely insulated by the *Elrod-Branti* caselaw.

To determine whether in fact plaintiff's position as Executive Secretary to the Executive Director for the Ports Authority is one that inherently falls under the *Vázquez Ríos* intrinsic link test we turn to the undisputed Job Description and other documents in the record which outline the functions of the particular position at issue. It is precisely the clear and uncontested nature of these job functions and the fact that official job descriptions, usually in the form of Job Classification Questionnaires ("JCQ"), have achieved formidable evidentiary status in patronage dismissal cases reviewed by the First Circuit, that prompts us to dispose of this case summarily. Although normally the First Circuit has relied heavily on the JCQ and other similar documents because of the "sketchy" facts plead in complaints and the interlocutory nature of their review of the qualified immunity issue, it now seems clear that these documents will have a conclusive impact on most cases of this nature. In other words, we read the First Circuit's strong emphasis on the Questionnaire as reflecting an inclination for us to summarily dispose of these sensitive political discrimination cases, many of which still loom on the horizon, whenever there is an uncontested job description that implicates the *Jiménez Fuentes* red flags of policymaking responsibility, confidentiality, or official communication. Any doubts about the controlling evidentiary importance of JCQs were resolved a few weeks ago in the case of *Rosario Nevarez v. Torres Gaztambide*, 820 F.2d 525 (1st Cir.1987). *Rosario Nevarez* was the first review of a Section 1983 political dismissal case *on the merits*. The First Circuit reversed the District Court's grant of equitable relief in a case involving the position of Arecibo Regional Director of Rural Housing Administration.

*Rosario Nevarez* extends the First Circuit's reliance on the job classification questionnaire, or similar uncontested document describing job functions. For purposes of the *Elrod-Branti* exceptions, only the inherent powers of a job are important.

The inherent powers, in turn, are derived from the JCQ or similar document.

This is true even in a case like *Rosario Nevárez*, where after several days of trial and a full record, the First Circuit found that:

The *only pertinent evidence* adduced at trial concerning the "inherent powers" of the Regional Director position was the information contained in the official classification questionnaire (OP–16) prepared by the Central Office of Personnel Administration. (Emphasis added.) Id. at 528.

Even an attempt to qualify a job questionnaire can be fruitless.

Rosario seeks to have the classification questionnaire qualified by Romero's testimony at trial describing the duties he *actually* performed during his tenure as RHA Regional Director. This testimony is irrelevant, however, because our analysis must focus upon the "inherent powers" of the position—that is, *those described in the job description* —not the duties actually performed. *See Collazo Rivera [v. Torres Gaztambide]*, 812 F.2d [258] at 261 [ (1st Cir.1987) ] (citing *DeAbadia v. Izquierdo Mora*, 792 F.2d [1187] at 1192 [ (1st Cir.1986) ]. *Id.* at p. 528, fn. 6.

The Court added for good measure the following:

We have said on more than one occasion that, when available, an official document providing an authoritative list of a position's inherent powers and duties is an invaluable aid in determining whether the employee holding that position is entitled to constitutional protection against politically motivated dismissal. (Citing *Méndez-Palou v. Rohena-Betancourt*, 813 F.2d 1255, 1260 (1st Cir.1987) and *Jiménez Fuentes [v. Torres Gaztambide]*, 807 F.2d [236] at 243–44 [ (1st Cir. 1986) ]. *Id.* at p. 528, fn. 8.

We can only add to these pronouncements that where, as in the present case, plaintiff does not seriously dispute the official listing of inherent powers and duties of the position, then the door is wide open for summary disposition of the case against her because she will be unable to demonstrate that her claims have a sufficient factual basis.

Armed with the now well-forged evidentiary tool created by the First Circuit in the line of cases discussed above, we now proceed to finally analyze why plaintiff in this case has no actionable claim by completing the second step of the *Jiménez Fuentes* test as well as the *Vázquez Ríos* test for the confidential employee exception.

Plaintiff's official job description reads as follows:

### EXECUTIVE SECRETARY JOB DESCRIPTION

NATURE OF JOB

This is confidential secretarial work, acting as Secretary to the Executive Director of the Ports Authority.

ILLUSTRATIVE EXAMPLES OF THE JOB

Takes shorthand dictation in English and Spanish of difficult, varied and confidential matters.

Assigns, coordinates, supervises the work of the personnel of the office to insure its correction and takes minutes of the Executive Director's staff meetings.

Organizes the correspondence by subject order of importance and maintains the confidential records of the Executive Director up to date.

Drafts correspondence for the signature of the Executive Director and takes care of visitors in the Reception Room.

Attends telephone calls. Makes local and international calls.

Transfers information and/or instructions of the Executive Director to other officers and employees of the Authority.

Performs all related tasks assigned.

During her deposition, plaintiff was asked whether the duties listed in the document described above were "inherent to position that you occupied there?" She answered, "Well, I performed these duties which are mentioned here." (referring to the job description document.) She went on to add that the job description was not complete; for example, it did not list that

she kept her bosses' calendar. (*See* plaintiff's exhibit 2 accompanying Memorandum for Summary Judgment.)

Finally, in the pretrial order approved by the Court, uncontested fact No. 7 reads in pertinent part "The Position of Executive Secretary was classified as one of trust and confidence (de confianza) by the Agency at the time of plaintiff's appointment and separation from the position." Under the contested facts section of the pretrial order no mention of the job description is made thus plaintiff has fully conceded the veracity of the functions detailed therein.

We must now view this list of uncontested job functions in light of the policymaking capacity of plaintiff's boss for purposes of the *Vázquez Ríos* intrinsic linkage to a policymaker test.

The Executive Director is the Chief Executive Officer of the Authority. He is its main director, supervisor and spokesman. It is primarily through him that the sensitive governmental policies developed and implemented by the Authority are articulated and defended. Moreover, as an arm of the Department of Transportation, the Ports Authority participates fully in the politically-sensitive dynamics involved in carrying out the Department's prerogatives concerning the planning, promotion and coordination of Government activity in the field of transportation.

The Executive Director thus is essential to the effective management of the Authority and plays a critical role in the implementation of the political goals designed by the incumbent political administration for this agency.

We, therefore, find that the Executive Director of the Ports Authority is a policymaker for purposes of both the *Jiménez Fuentes* and *Vázquez Ríos* tests discussed above. Now, we must determine if plaintiff's job inherently was such that she was intrinsically placed in intimate proximity to the confidential information of her policymaker boss.

The job description makes clear that the Executive Secretary acts as the personal secretary to the Executive Director and as such is directly supervised solely by him.

Plaintiff is responsible for providing personal support to the Executive Director and responding to his personal secretarial support needs, such as taking dictation from him and typing correspondence and documents drafted by him. According to plaintiff's job description, these functions extend to confidential matters. *See* Plaintiff's Job Description, Defendant's Exhibit 1, para. 1. Plaintiff is also responsible for organizing the work in the Executive Director's office. She assigns, coordinates, and supervises the work of the personnel of the office to insure its correction and takes minutes of the Executive Director's staff meetings. *See* Job Description, para. 2. Plaintiff handles all of the Executive Director's correspondence and maintains his confidential records. She organizes the correspondence by subject order of importance and maintans the confidential records of the Executive Director up to date; she transfers information and/or instructions of the Executive Director to other officers and employees of the Authority. *See* Job Description, para. 3. This control over the information and personal work product of the Executive Director justifies that the office holder be significantly in the Executive Director's trust.

In addition to her contact with confidential information, the Executive Secretary has significant representative and spokesperson functions that would lead a reasonable person to believe that the position came under the *Elrod-Branti* and *Vázquez Ríos* exception. For example, the Executive Secretary transfers information and/or instructions of the Executive Director to other officers and employees of the Authority. In addition, she drafts correspondence for the signature of the Executive Director, and takes care of visitors in the reception room. *See* Job Description, para. 4. In the performance of these specific functions, the Executive Secretary is acting as a spokesperson to the Executive Director, therefore, falling into the *Branti* exception. Acting as such, she communicates to the public and to other agencies the Executive Director's instructions, and/or information, which contain policy

views, making political affiliation a necessary and appropriate requirement for the effective performance of the position involved. *Vázquez Ríos, supra.*

In sum, the duties of the Executive Secretary are broad and far reaching. She has an intrinsic and ongoing access, as part of her duties, to information which is sensitive and confidential. Therefore, plaintiff cannot, under any set of conceivable facts, maintain her Section 1983 suit and the same must be dismissed.

## CONCLUSION

In accordance with the above, the complaint filed on January 13, 1986 is hereby dismissed.

Judgment shall be entered accordingly.

IT IS SO ORDERED.