Ismael **GUZMAN LORENZO**, Plaintiff,

v.

Angel M. **ALMODOVAR**, President of the Public Service Commission, Defendant.

Civ. No. 85–0996 (JP).

United States District Court, D. Puerto Rico.

July 24, 1987.

Israel Roldán González, Aguadilla, P.R., for plaintiff.

José Hamid Rivera, Saldaña, Rey, Morán & Alvarado, Santurce, P.R., for defendant.

OPINION AND ORDER

PIERAS, District Judge.

This is an action for damages and injunctive relief brought to redress violations of the first, fifth and fourteenth amendments to the United States Constitution under 42 U.S.C. § 1983. Plaintiff Ismael Guzmán Lorenzo alleges he was dismissed from his position as Regional Director of the Public

Service Commission (PSC), Guayama office, because of his political affiliation.

This matter is on defendant's Motion for Summary Judgment, and plaintiff's opposition thereto. In support of its motion, defendant argues that the plaintiff's position is such that political affiliation is an appropriate requirement for the effective performance of the public office involved.

## I. *The Standard for Summary Judgment*

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In passing on a summary judgment motion, the court must examine the record "in the light most favorable to the party opposing the motion." *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). With these principles in mind, we now examine the motions.

## II. *The Facts*

Pursuant to the stipulations of the parties, the Court finds there is no genuine issue as to the following material facts.

1. Plaintiff was originally employed on March 2, 1970, with the PSC as Public Service Inspector (PSI) I, with a salary of $265.00 per month; he was promoted to PSI II on August 28, 1972, and attained further promotions until his last career position, PSI III, on April 21, 1980, with a salary of $630.00 per month. He was appointed Regional Director of the Guayama Region on March 3, 1982, with a salary of $1,463.00.

2. By letter of March 15, 1985, defendant Angel M. Almodóvar, President of the PSC, separated plaintiff from his position as Regional Director effective that date. He was reinstated to PSI III in the Mayaguez Regional Office, with a monthly salary of $782.00.

3. Plaintiff is a member of the New Progressive Party (NPP), and defendant is a member of the Popular Democratic Party (PDP).

Upon a further review of the record, the Court finds there is no genuine issue as to the following material facts.

4. Plaintiff's position as Regional Director was classified as a trust or confidence position.

5. The NPP lost the general elections in 1984, and with it the control of the executive branch of the Commonwealth government, to the PDP. The standard bearer of the PDP, Rafael Hernández Colón, took office as Governor of Puerto Rico in January, 1985.

6. Pursuant to the Puerto Rico Public Service Personnel Act, 3 L.P.R.A. § 1301 *et seq.,* the Director of the Central Office of Personnel Administration (OCAP), José Roberto Feijoo, on June 9, 1979, issued Circular 6–79 regarding the classification of confidence employees within the Central Administration. As part of the classification plan, 57 positions were developed and descriptions were summarized. The Circular includes the classification and summary of Regional Director I. That summary is listed as follows:

> Professional, technical and/or administrative work that require [sic] the application of varied knowledge in the different fields of management, coordination, and supervision at a regional level of an agency or small executive department's programs. The employee within this class shall advise the Head of the Agency during the process of development and formulation of the agency's public policy and shall implement same at a regional level once finally approved. He/she performs the work with utmost independence and action criteria.

7. OCAP subsequently issued the Job Classification Questionnaire (OP–16) for plaintiff's position, signed by plaintiff, which is set out in pertinent part, infra.

## III. *Fourteenth Amendment Claim*

Defendant's Motion for Summary Judgment did not address whether it was entitled to qualified immunity from damages on the due process claim. The Court

is mindful, however, that defendant's failure to make obvious arguments may not preclude the unnecessary prolongation of this case at the appellate level. *Rodríguez Rodríguez v. Muñoz Muñoz*, 808 F.2d 138, 140 (1st Cir.1986) *reversing* 603 F.Supp. 349 (D.P.R.1985) (defendant entitled to qualified immunity on appeal where the issue was not advanced in the district court).

The due process clause of the fourteenth amendment guarantees public employees with a property interest in continued employment the right to an informal hearing prior to being discharged. *Brock v. Roadway Express*, — U.S. —, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). A property interest is created by "existing rules or understandings that stem from an independent source such as state law." *Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491.

The local law governing the issue of the property right is the Puerto Rico Public Service Personnel Law, ("Act") 3 L.P.R.A. § 1301 *et seq.* The Act divides government employees into two categories, career employees and trust or confidential employees. 3 L.P.R.A. § 1349. Confidential employees are "those who intervene or collaborate substantially in the formulation of public policy, who advise directly or render direct services to the head of the agency ..." 3 L.P.R.A. § 1350. In contrast, career employees may only be dismissed for "good cause, after preferment of charges in writing." 3 L.P.R.A. § 1336(4) (Supp. 1985). Confidential employees are "of free selection and removal." *Id.*

Plaintiff's position as Regional Director was classified as a trust or confidence position under the Personnel Act. Under the Personnel Act, a trust employee does not possess a property interest to continued public employment, and therefore, is not entitled to due process protections prior to discharge. *Laureano-Agosto v. García Caraballo*, 731 F.2d 101, 103 (1st Cir.1984). Accordingly, the Court DISMISSES the claim for violation of plaintiff's due process rights.

### IV. *First Amendment Claim*

▮ Plaintiff claims that as Regional Director of the PSC he was confined to politically neutral, technical and professional matters. The work he performs is so remote from the politically-influenced functions of the agency, and his discretion and authority is limited to recommendations to his supervisor.

At the time of plaintiff's demotion, the law was clearly established that public employees are protected by the first amendment guarantees of freedom of speech and association from being discharged solely because of political affiliation, unless political affiliation is an appropriate requirement for the effective performance of the office involved. *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 367–68, 96 S.Ct. 2673, 2686–87, 49 L.Ed.2d 547 (1976). In *Branti* and *Elrod*, the Supreme Court recognized that in certain positions of government employment, where an employee's private political beliefs would interfere with his public duties, his first amendment rights could be required to yield to the state's vital interest in maintaining governmental effectiveness and efficiency. *Branti*, 445 U.S. at 517, 100 S.Ct. at 1294; *Elrod*, 427 U.S. at 366, 96 S.Ct. at 2686. The issue we must decide is whether, under an objective analysis, the defendant was reasonable in believing party affiliation was an appropriate requirement for plaintiff's position. *De Abadía v. Izquierdo Mora*, 792 F.2d 1187, 1191 (1st Cir.1986).

Under *Branti-Elrod* analysis, the threshold inquiry is to determine whether the positions at issue relate to partisan political interests or concerns. *Jiménez Fuentes v. Torres Gaztambide*, 807 F.2d 236 (1st Cir. 1986). *See also Collazo Rivera v. Torres Gaztambide*, 812 F.2d 258 (1st Cir.1987). If that issue is satisfied, then we must determine whether the inherent responsibilities of the position are such that party affiliation is an appropriate requirement for the job. *Jiménez Fuentes*, 807 F.2d at 242; *Collazo Rivera*, 812 F.2d at 261.

The First Circuit has further expanded the threshold inquiry by addressing whether the agency involved "handled matters potentially subject to political differences and to focus upon how the plaintiff's position influenced the resolution of such matters." *Mendez-Palou v. Rohena-Betancourt*, 813 F.2d 1255, 1258 (1st Cir.1987). This inquiry is designed to eliminate from further consideration those positions involving "strictly technical or professional" functions. *Mendez-Palou*, 813 F.2d at 1258.

The function of the PSC is to regulate the public service companies in Puerto Rico, which include the public transportation of both passengers and cargo, and radio, television and telephone airwaves. 27 L.P.R.A. § 1101. The efficient operation of the public transportation system as well as the operation of the public communication and information system has always been a matter of great public concern and debate. As a Seventh Circuit noted in *Tomczak v. City of Chicago*, 765 F.2d 633, 641 (7th Cir.1985), "[e]lections often turn on the success or failure of the incumbent to provide ... services." This is certainly true when dealing with the public transportation and communication system.

Given the function of the PSC, the position of Regional Director of the PSC relates to partisan political interests or concerns. Position Circular No. 6–79 reads that the function of the position is to advise the "Head of the Agency" in the development of public policy and its implementation at the regional level. It is thus a position in the agency that has the potential to impact on the nature and efficiency of public transportation and information systems in Puerto Rico.

The second inquiry is to focus on the inherent responsibilities of the Regional Director. To satisfy this, the Court is constrained to only make an excursion into the listed duties on the OP–16 form. The duties that plaintiff claims he actually performs are deemed irrelevant. *Mendez-Palou*, 813 F.2d at 1260.

Whenever possible, we will rely on this document because it contains precisely the information we need concerning the position's inherent powers and responsibilities to address the issue of qualified immunity.

While the procedural posture of *Mendez-Palou* was the denial of a summary judgment motion based on qualified immunity, it seems all we need to do on the district court level is behold the OP–16 form to determine the issue of political appropriateness. In *Rosario Nevárez v. Torres Gaztambide*, 820 F.2d 525 (1st Cir.1987), the First Circuit held that after a five-day bench trial on the merits regarding the dismissal of a Regional Director of the Rural Housing Administration, the trial judge's consideration of live testimony was unnecessary, and only a consultation with the OP–16 was appropriate. "This testimony is irrelevant, however, because our analysis must focus upon the 'inherent powers' of the position—that is, those described in the job description—not the duties actually performed." At 528 n. 6. Similarly, in *Collazo Rivera v. Torres Gaztambide*, 812 F.2d 258 (1st Cir.1987), in reviewing the grant of a preliminary injunction against the removal of a Regional Director of the Rural Housing Administration, the appeals court looked only to the OP–16 form. Even though those cases were appealed from different procedural phases of the litigation, the First Circuit delineated no other approach in deciding this issue than to scrutinize the OP–16 form. We are confident that in this fourth category of cases, a summary judgment motion seeking a dismissal of not only the damages issue but the entire case on the merits, we should declare the OP–16 form the only relevant evidence.

We find it necessary to paraphrase only the most salient functions as they may relate to policymaking, access to confidential information and communication or other indicia that require party affiliation.

"plan, coordinate and supervise;" "preparing and developing a work plan ... and shall submit recommendations thereof to the Regional Coordinator and to the President;" "supervise the units forwarding the guidelines that originate in the Regional Coordinator's office ... and introduce those he/she considers appro-

priate;" "coordinate ... the implementation of new systems, procedure, guidelines and regulations enforced by the Agency;" "Keep the Regional Coordinator and President informed ... through periodic reports and meetings;" "liason between the office he/she directs and government, civic and professional community groups;" "provide top counseling to the President of the Commission and the Regional Coordinator in everything dealing with the operation programs;" "give recommendations to the President [of the Commission] and the Regional Coordinator as to their improvements, such as adopting and reviewing new regulations or amendments to legislation that deal with public services;" "supervise any research, investigation or inspection job performed within the jurisdiction of the office in regard with transportation entities, gas companies, travel offices, public warehouse and pipelines;" "handle, investigate and solve the process that must follow complaints filed by citizens in regard to public services."

As can readily be seen, the inherent functions of this Regional Director concerns matters of partisan political concern, involve policymaking responsibilities, and allow plaintiff to be both privy to confidential communication and a spokesman for the Guayama Region. He is privy to confidential information in that he counsels and keeps informed the President of the Commission and the Regional Coordinator. He is a spokesman in that he is a liason between the government, and civic and professional community groups. He has policymaking responsibilities in that he implements Agency procedures and makes recommendations to the President of the Commission regarding possible new regulations. Thus, plaintiff's position as Regional Director of the Public Service Commission is one where political affiliation is an appropriate requirement for the office involved. *Jiménez-Fuentes v. Torres Gaztambide*, 807 F.2d 230, 246 (1st Cir.1986). Plaintiff, under the great weight of First Circuit authority, must yield his first amendment rights to the party currently controlling the executive branch. All the other Regional Directors of other executive agencies whose positions were scrutinized on appeal from differing procedural phases of this type of litigation were found to require political affiliation with the PDP. *See e.g., Rosario Nevárez v. Torres Gaztambide*, 820 F.2d 525 (1st Cir.1987) (RHA; trial on the merits); *Pérez Quintana v. Gracia Anselmi*, 817 F.2d 891 (1st Cir. 1987) (ADT; summary judgment); *Raffucci Alvarado v. Carmen Sonia Zayas*, 813 F.2d 1263 (1st Cir.1987) (Social Services Department; summary judgment); *Collazo Rivera v. Torres Gaztambide*, 812 F.2d 258 (1st Cir.1987) (RHA; preliminary injunction); *Jiménez Fuentes v. Torres Gaztambide*, 807 F.2d 236 (1st Cir.1986) (CRUV; preliminary injunction); *Rodríguez Rodríguez v. Muñoz Muñoz*, 808 F.2d 138 (1st Cir.1986) (ADT; issue first advanced on appeal). Given that under *Rosario Nevárez*, 820 F.2d at 527–28, the only appropriate examination is on the OP–16 form, a trial on the merits of this issue is unnecessary.

Accordingly, defendant's motion for summary judgment is GRANTED, and the case is DISMISSED.

The Clerk is to enter Judgment accordingly.

IT IS SO ORDERED.