**Ramon MONGE–VAZQUEZ,**
**Plaintiff, Appellee,**

v.

**Santos ROHENA–BETANCOURT,**
**Defendant, Appellant.**

**Pablo ORTIZ LEBRON, et al.,**
**Plaintiffs, Appellees,**

v.

**Alejandro SANTIAGO NIEVES, etc., et**
**al., Defendants, Appellants.**

Nos. 86–1431, 86–1661.

United States Court of Appeals,
First Circuit.

Submitted Dec. 5, 1986.

Decided March 10, 1987.

Manuel Alvarado, Hato Rey, P.R., Zulei-ka Llovet, San Juan, P.R., Saldana, Rey, Moran & Alvarado, Santurce, P.R., Hector Rivera-Cruz, Secretary of Justice, and Rafael Ortiz-Carrion, Sol. Gen., San Juan, P.R., on brief, for defendant, appellant in No. 86–1431.

Carlos Del Valle, Ramirez & Ramirez and Hector Rivera-Cruz, Secretary of Justice, San Juan, P.R., on brief, for defendants, appellants in No. 86–1661.

Alberto J. Perez-Hernandez and Gonzalez & Perez-Hernandez, on brief, for plaintiff, appellee in No. 86–1431.

Eliezer Aldarondo, Miguel Pagan and Aldarondo & Lopez Bras, on brief, for plaintiffs, appellees in No. 86–1661.

Before CAMPBELL, Chief Judge, COFFIN and SELYA, Circuit Judges.

COFFIN, Circuit Judge.

This case marks the addition of two more positions to our growing catalogue of political discharge cases commenced in the wake of the 1984 gubernatorial election in Puerto Rico. Both plaintiffs are former government employees who were allegedly dismissed from their positions due to their political affiliation. Defendants moved for partial summary judgment on the issue of qualified immunity in both cases, but the district courts denied their motions. These interlocutory appeals followed.[1]

The cases were briefed separately and submitted to the panel. Rather than reiterate the analysis to be employed in such cases, we simply adopt the analysis set forth in sections II and III of our opinion in *Mendez-Palou v. Rohena-Betancourt,* 813 F.2d 1255, 1257–60 (1st Cir.1987). The instant opinion, therefore, focuses solely upon the nature of plaintiffs' positions and the question of whether plaintiffs were protected against patronage dismissal by a clearly established constitutional right.[2]

1. *Monge-Vazquez: Director of Office of Education and Community Relations, Environmental Quality Board.*

Plaintiff-appellee Ramon Monge-Vazquez alleges that, due to his political affiliation, he was removed from his confidential position as Director of the Office of Education and Community Relations for the Environmental Quality Board ("EQB") and reinstated to a career position within the agency by defendant-appellant Santos Rohena-Betancourt, President of the EQB. Plaintiff's complaint, however, states only that his former position "was not a policy-making position" and that he "did not participate in the formulation of policies relating to the operation of the EQB." Because the complaint does not contain sufficient information to permit a determination of whether plaintiff's right to be protected against politically motivated dismissal was clearly established at the time of his demotion, we must consider other undisputed record facts. *See Mendez-Palou,* at 1259–60; *Bonitz v. Fair,* 804 F.2d 164, 168 n. 4 (1st Cir.1986).

Plaintiff's former position was classified as a position of trust and confidence within the EQB pursuant to the Puerto Rico Public Service Personnel Act. P.R.Laws Ann. tit. 3, § 1350. The record, moreover, contains a Classification Questionnaire pertaining to plaintiff's former position that was prepared by the Puerto Rico Central Office of Personnel Administration ("COPA") and

---

1. In addition to seeking immunity from Monge-Vazquez' section 1983 damage claim, defendant-appellant Rohena-Betancourt also urges us to exercise our pendent appellate jurisdiction to dismiss that portion of plaintiff's complaint seeking injunctive relief and reinstatement. Due to the circumscribed nature of our interlocutory review, however, we cannot take this step in the context of this appeal. *See Bonitz v. Fair,* 804 F.2d 164, 173–76 (1st Cir.1986).

2. Both plaintiffs also allege in their complaints that defendants violated their right to procedural due process. We do not consider this aspect of the cases, however, because the issue was not discussed on appeal.

completed by plaintiff's predecessor.[3] According to this questionnaire, the Director of Education and Community Relations:

1. [I]s responsible for the application of public policy pertaining to the informative and educational aspects assigned to the EQB.

2. [D]irects a group of professionals and technicians in specialized tasks designed to create public awareness in Puerto Rico pertaining to the conservation of ... environmental and natural resources and the control of their quality.

3. [D]irects promotional campaigns pertaining to the Environmental Public Policy Act, as well as informative and educational activities at every educational [level in Puerto Rico, related to the environmental] impact functions developed by the different units of the EQB, and of other agencies that collaborate in the public policy established by the EQB.

4. [P]articipates as advisor to the President of the EQB, to other members of the Board of Directors, and to officials in charge of units related with the informative and educational aspects under his direction.

5. [I]s responsible for the planning needed with officials of the Department of Education, the forums of high education (private and public), the press and other information and communication media, pertaining to the educational and informative programs and activities of the EQB.

6. [I]s responsible for developing orientation programs for the community pertaining to the quality of the environment in Puerto Rico and what the government and the private sector are doing to preserve the same.

7. [D]rafts all of those reports required of him in relation to his work.

8. [P]erforms other related tasks that the President may give him.

Furthermore, the Director can use his own judgment in the execution of his duties, subject only to revision by the President of the EQB, and receives merely superficial supervision.

■ From this description of plaintiff's former position, we can only infer that the position encompasses a substantial portion of the EQB's communicative tasks. Furthermore, it is apparent that the EQB is charged with a politically sensitive mission and potentially deals with issues involving partisan interests and concerns on a routine basis. As we noted in *Mendez-Palou*, at 1260, the EQB's mandate includes both recommending "public policy to encourage and promote the improvement of environmental quality" and establishing "standards for the quality and purity of the environment." P.R.Laws Ann. tit. 12, § 1131(4), (12). We cannot say, therefore, that plaintiff was protected from patronage dismissal by a clearly established constitutional right. Indeed, as the Supreme Court indicated in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), a public official "may appropriately believe that the official duties of various assistants who help him write speeches, explain his views to the press, or communicate with the legislature cannot be performed effectively unless those persons share his political beliefs and party commitments." *Id.* at 518, 100 S.Ct. at 1294.

Based on the authority that existed at the time of plaintiff's removal, we find that defendant-appellant Rohena-Betancourt was objectively reasonable in believing that the Director of the Office of Education and Community Relations could be replaced on the basis of political affiliation. Consequently, defendant is entitled to immunity from liability for damages and the court below erred by denying his motion for partial summary judgment.

2. *Ortiz Lebron: Regional Director, Department of Natural Resources.*

Plaintiff-appellee Pablo Ortiz Lebron alleges that, due to his support for the unsuccessful party in the 1984 elections, he

---

**3.** For the purposes of this appeal, we do not consider the revised Classification Questionnaire completed by plaintiff's successor. The information relevant to the issue of qualified immunity is the nature of the position at the time of the discharge, not at some later date.

was removed from his position as Guayama Regional Director of the Puerto Rico Department of Natural Resources ("DNR") and reinstated in a career position within the agency by defendants-appellants Alejandro Santiago Nieves, former Secretary of Natural Resources,[4] and Carlos Conde, Assistant Secretary of Natural Resources in charge of management affairs. The position of DNR Regional Director is classified as a position of trust or confidence pursuant to the Puerto Rico Public Service Personnel Act. P.R.Laws Ann. tit. 3, § 1350.

In his complaint, Ortiz Lebron states simply that his "political association and political ideas and beliefs were not an indispensable or necessary requisite for the appointment and performance of his duties." He also avers that his "functions and duties were not policy making ones" and that he "did not participate in the formulation of the public policy of the Department of Natural Resources of Puerto Rico." Again, such allegations are insufficient to permit a determination of whether plaintiff was protected from patronage dismissal by a clearly established constitutional right. We therefore turn to the undisputed Description of Position prepared by COPA.

According to this official job description, a DNR Regional Director performs the following functions:

—Programs, directs, coordinates and supervises all agency programs, projects and activities at the regional level, mainly those related [to] the conservation, utilization, vigilance and custody of the natural resources and systems.

—Administrates resources (financial, human and all other type[s]) which have been provided to the region for the fulfillment of his particular responsibilities.

—At the request of the Secretary of Natural Resources, represents her and the Assistant Secretaries in the activities which require coordination at the municipal [or] regional level or in other executive agencies....

—Programs, directs and supervises the periodic evaluation work as to how natural resources and natural systems of the region have been affected or will be affected in development of activities on the use of land, recreation, housing, and others. To this end the Regional Office will compile and maintain statistical and vital data on the natural resources of the region; ....

—Assigns [and co-]coordinates ... all investigations regarding complaints which are received at the regional level related to violations [of] the laws and regulations established to protect the natural resources of the region. In like manner, he directs the inspection work to corroborate and verify that the permits issued for the use and utilization of the natural resources [are] executed in harmony and as stipulated in the clauses and conditions of said permits and makes immediate decisions with respect to issuing orders to discontinue operations or correct deficiencies when violations are detected....

—Plans, coordinates and supervises the orientation, education and participation activities of the citizens related to programs at the regional level of the Department of Natural Resources regarding the utilization and protection of natural resources.

—[Is] [r]esponsible for preparing and submitting periodic reports to the Assistant Secretary on the status of the Agency's programs at the regional level and prepares the pertinent recommendations on same.

—Performs all related tasks which are assigned by the Assistant Secretary or the Secretary of Natural Resources.

Furthermore, the Regional Director is subject only to limited review by the Assistant Secretary of Operations focusing on "aspects of public policy."

■ Like the plaintiff in *Jimenez Fuentes v. Torres Gaztambide*, 803 F.2d 1 (1st Cir.1986) (en banc), the Regional Director of the DNR is employed by an agen-

---

**4.** Santiago's successor as Secretary of Natural Resources is also a party to this action for the purposes of injunctive relief. Fed.R.Civ.P. 25(d).

cy which formulates and implements public policies that potentially implicate partisan interests. *See id.* at 7–8. It is also evident from the foregoing Classification Questionnaire that a Regional Director regularly takes action with regard to issues that potentially involve partisan political concerns, such as the handling of complaints pertaining to violations of natural resource laws, the inspection of natural resource uses to assure compliance with permits, and the evaluation of the effect of development and other activities on the natural resources of the region.

Although not ultimately responsible for formulating the broad contours of the DNR's public policy, a Regional Director does possess the vast responsibility for directing all agency programs, representing the Secretary, and implementing the agency's broad policies at the regional level. Successfully completing these various duties necessarily requires a Regional Director to perform a mix of the policymaking, confidential, and communicative tasks envisioned by *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), *Branti*, and their progeny. We therefore believe that plaintiff-appellee Ortiz Lebron was not protected from patronage dismissal by a clearly established constitutional right and that defendants-appellants Santiago Nieves and Conde were objectively reasonable in believing that a DNR Regional Director could be replaced on the basis of political affiliation. Accordingly, we hold that the district court erred in denying defendants' motion for partial summary judgment.

*For the foregoing reasons, the orders of the district courts are vacated and the cases are remanded with instructions to enter summary judgment for defendants on the damage claims on the basis of qualified immunity.*