Miguel A. Perez QUINTANA,
Plaintiff, Appellee,

v.

Jose G. Gracia ANSELMI, etc., et al.,
Defendants, Appellants.

No. 86–1592.

United States Court of Appeals,
First Circuit.

Argued Feb. 2, 1987.

Decided April 24, 1987.

---

Paul B. Smith, Jr., Santurce, P.R., with whom Rafael Ortiz Carrion, Sol. Gen., San Juan, P.R., and Hector Rivera-Cruz, Secretary of Justice, were on brief, for defendants, appellants.

Rafael F. Castro Lang with whom Jose Ramon Perez Hernandez, San Juan, P.R., was on brief, for plaintiff, appellee.

Before COFFIN, Circuit Judge,
WISDOM,* Senior Circuit Judge, and
TORRUELLA, Circuit Judge.

COFFIN, Circuit Judge.

■ Defendant-appellant Jose Gracia Anselmi, former Administrator of Puerto Rico's Right to Employment Administration ("REA"), dismissed plaintiff-appellee Miguel Perez Quintana from his position as REA Regional Director for the Caguas Region in 1985. Like so many other discharged political officers in Puerto Rico, plaintiff brought a section 1983 action seeking damages and reinstatement, alleging that his dismissal was due solely to his political beliefs and his association with the unsuccessful political party in the 1984 gubernatorial elections.[1] *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Defendant Gracia[2] moved for summary judg-

---

* Of the Fifth Circuit, sitting by designation.

1. Plaintiff also alleges in his complaint that the dismissal violated his due process rights. We do not address this aspect of the case because the issue was not discussed on appeal.

2. Defendant-appellant Rafael Cordero-Santiago, Gracia's successor as Administrator of the REA, is also a party to this action for the purposes of injunctive relief. In this opinion, however, we focus solely on plaintiff's damage claim and do not address the propriety of equitable relief.

ment on the basis of his qualified immunity from damage actions, but the district court denied his motion. We have jurisdiction to consider on interlocutory appeal the narrow question of whether the court properly denied defendant's motion.[3] *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *De Abadia v. Izquierdo Mora*, 792 F.2d 1187, 1190 (1st Cir.1986).

Rather than reiterate our analysis of the legal issues presented by this appeal, we simply adopt the reasoning set forth in sections II and III of our recent opinion in *Mendez-Palou v. Rohena-Betancourt*, 813 F.2d 1255, 1257–60 (1st Cir.1987). As we concluded in that case, "there was no clearly established constitutional protection against patronage dismissal [in 1985] for those individuals whose positions potentially concerned matters of partisan political interest and involved at least a modicum of policymaking responsibility, access to confidential information, or official communication." *Id.* at 1259. If a position did not enjoy clearly established constitutional protection at the time of dismissal, then the defendant would be entitled to immunity from a damage action premised on the illegality of the discharge or demotion.

As in every similar case we have heard to date, plaintiff's complaint fails to allege sufficient facts for us to determine whether *Branti* and its progeny clearly established that plaintiff enjoyed protection against politically motivated discharge. Plaintiff has simply provided his job title and averred generally that "political affiliation was neither a de jure nor a de facto job requirement for the effective performance" of his official duties. Consequently, as we have done on several previous occasions, we must examine undisputed record materials, including plaintiff's official job description, to determine whether plaintiff was protected by a clearly established con-

stitutional right. *See Mendez-Palou*, at 1259; *De Abadia*, 792 F.2d at 1194.

■ The Puerto Rico legislature established the Right to Employment Administration in 1968 "to develop the creation ..., by other public entities or by private employers, of additional employment opportunities, training or retraining and in specific cases to provide said opportunities directly by itself." P.R.Laws Ann. tit. 29, § 1103. In essence, the REA was designed to address the historically critical, and increasingly political, problem of high unemployment in Puerto Rico, especially among the under-educated and under-trained. As we noted in *Rodriguez Rodriguez v. Munoz Munoz*, 808 F.2d 138 (1st Cir.1986), an REA regional director is "responsible for implementing at the regional level the [REA's] 'mission,' that is, to provide job training and find employment for the economically underprivileged, according to the region's needs." *Id.* at 140. Given the REA's plainly political mandate and the wide scope of authority exercised by each of the nine Regional Directors, who report directly to the Administrator, we must hold that plaintiff's position potentially concerned matters of partisan political interest.

Turning to the official functions of plaintiff's former position, we begin our review by pointing out that REA Regional Directors occupy nine of the 23 agency positions that are classified as trust positions by the Puerto Rico Public Service Personnel Act. P.R.Laws Ann. tit. 3, § 1350. Furthermore, the relevant official job description, which was prepared by Puerto Rico's Central Office of Personnel Administration ("COPA") and signed by plaintiff, provides that an REA Regional Director shall:

—[R]eview and approve requisitions for equipment, materials and supplies needed for the operation of the regional office and the different [REA] programs.

---

**3.** Defendant Gracia also urges us to exercise our pendent appellate jurisdiction to dismiss that portion of the complaint seeking injunctive relief and reinstatement. Due to the circumscribed nature of our interlocutory review, however, we are unable to consider in the context of

this appeal whether injunctive relief would be appropriate on the facts of this case. *See Monge-Vazquez v. Rohena-Betancourt*, 813 F.2d 22, 23 n. 1 (1st Cir.1987); *Bonitz v. Fair*, 804 F.2d 164, 173–76 (1st Cir.1986).

—[J]ustify the reassignment or creation of new positions necessary to cope with the increase in duties and responsibilities of the regional office.

—[Select] REA personnel at the regional level.

—[Recommend] leaves, promotions, raises within grade, and other personnel actions.

—[R]epresent the REA in all internal, interagency and community activity.

Among other things, the Regional Director also:

—Advises officials and employees in the performance of their functions

—Performs other similar tasks that may be assigned to him.

—Represents the Administrator at the Regional level.

—Directs and supervises the implementation of the different programs established and/or directed by the REA.

—[E]stablishes internal administrative policies and procedures to regulate the activities of the regional office within the provisions of law, policies and regulations that govern the operation of the agency.

—Determines the organization of the regional office within the administrative and operational structure of the agency.

.     .     .     .     .

—[Directs] and coordinate[s] at the regional level the activities and services of the different agency programs.

Finally the COPA job description also reveals that an REA Regional Director receives only general instructions and can generally exercise independent judgment, subject to revision.

Based on this list of job functions, we conclude that the position of REA Regional Director is so involved with policymaking, confidential, and official communicative tasks that we cannot say plaintiff was entitled to clearly established protection against politically motivated discharge at the time of his dismissal. As in *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d

236 (1st Cir.1986) (en banc), it is apparent here that the "Regional Director is, in effect, the alter ego of the [Administrator] at the regional level. It is through the relationship with the Regional Directors" that the Administrator "maintains effective control of the implementation" of the REA's programs. *Id.* at 245. We therefore hold that plaintiff did not enjoy the benefit of a clearly established right protecting him from dismissal due to his political affiliation and that, accordingly, defendant Gracia is entitled to immunity from a section 1983 damages action. We express no opinion, however, on the propriety of injunctive relief except to note that this issue remains to be resolved on remand.

*For the foregoing reasons, the order of the district court is vacated and the case remanded with instructions to enter partial summary judgment in favor of defendant Gracia on the damage claims on the basis of qualified immunity.*

TORRUELLA, Circuit Judge (dissenting).

For the reasons stated in my dissenting opinion in *Alicea Rosado v. Carmen Sonia Zayas,* 813 F.2d 1263 (1st Cir.1987) (Torruella, J., dissenting), I respectfully dissent. I cannot, however, for the sake of saving myself some work, and perhaps the reader also, leave it at that. I find it difficult to remain silent in the face of the majority's assertion that the functions that appear in the official job description involve "policymaking, confidential, and official communicative tasks," *ante* at 892–893. It is difficult for me to comprehend why the purchase of pencils, typewriters and similar matters [1] would require policymaking to any important degree, would implicate the need for secrecy to any extent, or would involve the making of a speech. The same can be said of the other functions listed by the majority as including policymaking, confidential and official communicative tasks. Rather than that, in essence, they are functions exercised by any middle-echelon supervisor. Putting the title of "Re-

---

**1.** "[R]eview and approve requisitions for equipment, materials and supplies needed for the operation of the regional and the different [REA] programs." *Ante,* at 892.

gional Director" on appellee does not make him any more exalted. To equate the exercise of such routine administrative functions to being a confidential policymaker is in my opinion, with all due respect, a misinterpretation of the facts, and a devaluation of the burden which appellants must carry to establish that such a position is one in which "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980). *See Elrod v. Burns*, 427 U.S. 347, 362, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976). Appellee is more like the administrative technocrat in *de Choudens v. Government Development Bank of Puerto Rico*, 801 F.2d 5 (1st Cir. 1986) (en banc), for whom we concluded no political affiliation was required.

Lastly, I believe we are too facile in our assumption of interlocutory appellate jurisdiction. Irrespective of the outcome of the federal damage action, there remains the pendent state cause against appellant *personally, see Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985), as well as the claims for equitable relief. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2739 n. 34, 73 L.Ed.2d 396 (1982). Thus the policy reasons for allowing an exception to the rule against interlocutory appeal are not present. *See Bever v. Gilbertson*, 724 F.2d 1083, 1086–1087 (4th Cir.1984); *cert. denied sub. nom. Rockefeller v. Bever*, 469 U.S. 948, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984).

I dissent.