**In re James D. HOWES, Debtor.**

**Jane F. Wiczkowski, M.D., Plaintiff,**

**v.**

**James D. Howes, Defendant.**

**Bankruptcy No. 98–32825(2)7.
Adversary No. 99–3080.**

United States Bankruptcy Court,
W.D. Kentucky,
Louisville Division.

Feb. 17, 2000.

**282**

Gary Martin Smith, Louisville, KY, for Debtor.

William W. Lawrence Louisville KY, trustee.

### *MEMORANDUM–OPINION*

J. WENDALL ROBERTS, Bankruptcy Judge.

This Adversary Proceeding was filed by the Plaintiff, Dr. Jane F. Wiczkowski ("Wiczkowski"), who seeks to have certain claims against the Defendant/Debtor, James D. Howes ("Debtor" or "Howes"), determined to be nondischargeable under 11 U.S.C. § 523(a)(6). The claims at issue have not at this time been adjudicated. They are presently pending in the Jefferson Circuit Court, in an action that has been stayed by Debtor's bankruptcy. The Debtor has filed a Counter–Claim against Wiczkowski in the above-captioned adversary proceeding, seeking sanctions for Wiczkowski's alleged violation of the Bankruptcy Code's 11 U.S.C. § 362(a) stay provisions. Debtor bases his Counter–Claim on Wiczkowski's continued efforts to litigate the State Court action after receiving notice of Debtor's bankruptcy.

This matter is presently before the Court on the following plethora of motions filed by the parties: (1) the Debtor's Motion for Summary Judgment on Plaintiff's Adversary Proceeding Complaint; (2) Plaintiff's Cross–Motion for Summary Judgment as to claims asserted by her Complaint; (3) Plaintiff's Motion for Summary Judgment on Debtor's Counter–Claim; (4) Debtor's Cross–Motion for Summary Judgment on his Counter–Claim; (5) Debtor's Motion to Allow Summary Judgment Memorandum in Lieu of Trial Brief; and (6) Debtor's Objection to Plaintiff's Use of Witnesses and Motion to Strike.

The Court has fully reviewed and considered the multitude of briefs filed by the parties, most of which are voluminous in length, as well as the entire file. The Court finds from this review that there are material facts in dispute with regard to Wiczkowski's § 523(a)(6) claim. The facts in the record at this time do not establish the requisite elements necessary to support that claim. The claim is very fact intensive, focusing primarily on Debtor's subjective intent. Thus, the Court finds this is more appropriately a matter for trial, where the facts can be developed through the testimony of witnesses. For the reasons discussed more fully below the Court finds that neither party is entitled to Summary Judgment. Accordingly, both Debtor's Motion for Summary Judgment on Plaintiff's claims and Plaintiff's Cross–Motion will be overruled by separate Order.

With regard to Debtor's Counter–Claim, the Court finds for the reasons set forth below that the undisputed material facts establish that Wiczkowski did not violate the stay provisions of the Bankruptcy Code and is entitled to a judgment in her behalf with regard to the Debtor's Counter–Claim. Accordingly, the Court will sustain Wiczkowski's Motion for Summary Judgment on the Debtor's Counter–Claim and will overrule Debtor's Cross–Motion.

Finally, as to the pretrial Motions, the Court will sustain Debtor's Motion to Allow his Summary Judgment Memorandum in Lieu of a Trial Brief and will overrule as moot his Objection to Plaintiff's use of Witnesses and Motion to Strike.

## FACTS

### I. PROCEDURAL HISTORY OF CASE.

Debtor is a practicing attorney in the State of Kentucky. At its inception, this action arose as a result of Debtor pursuing a medical negligence action on behalf of clients against Wiczkowski, a medical doctor. That action was filed in the Pulaski Circuit Court on January 3, 1995, and was ultimately dismissed by Debtor, acting on his clients' behalf, the morning of trial.

Thereafter, Debtor filed for Chapter 7 Bankruptcy, on May 21, 1998. Wiczkowski was not listed as a creditor, as she had not filed a claim against him at that time.

Subsequently, on January 4, 1999, Wiczkowski, having received no notice of Debtor's bankruptcy, filed her own State Court action against Debtor in Jefferson Circuit Court. Asserting that Debtor filed and pursued the Pulaski Circuit Court action against her without conducting a reasonable inquiry and investigation into the facts supporting the claims, and without necessary expert opinion and testimony, Wiczkowski asserted the following three causes of action against Debtor: (1) malicious prosecution; (2) abuse of process; and (3) intentional infliction of emotional distress. Debtor apparently did not advise Wiczkowski of his bankruptcy at that time.

It appears that nothing happened in that case for several weeks, until March 3, 1999, at which time Wiczkowski propounded Interrogatories and Requests for Production of Documents. In response, on March 31, 1999, Debtor moved to reopen his bankruptcy case in order to amend his Schedules to add Wiczkowski as a creditor. The next day the Bankruptcy Court entered an Order allowing interested parties 30 days to file objections. Thereafter, by letter dated April 9, 1999, Debtor's counsel advised Wiczkowski's counsel of Debtor's bankruptcy and directed his attention to the stay provisions set forth in 11 U.S.C. § 362(a). Subsequently, on April 15, 1999, Wiczkowski's counsel filed a Motion to Compel discovery in the Jefferson Circuit Court action. Debtor's counsel gave Wiczkowski's counsel a second notice of the bankruptcy by faxed letter, on April 16, 1999. Wiczkowski, nevertheless, pursued her Motion to Compel and a hearing was held in the State Court action on April 19, 1999. The State Court overruled the Motion to Compel at that hearing.

On April 30, 1999, Wiczkowski filed an Objection in Debtor's bankruptcy case to Debtor's Motion to Reopen his case to Amend his Schedules to add Wiczkowski as a creditor. A hearing was conducted before the Bankruptcy Court on May 5, 1999, and Wiczkowski's Objection was overruled. Thereafter, Wiczkowski filed this adversary proceeding seeking to have her claims for malicious prosecution, abuse of process and intentional infliction of emotional distress declared nondischargeable under § 523(a)(6) of the Bankruptcy Code.[1]

### II. FACTUAL BACKGROUND.

On January 2, 1994, Wiczkowski examined and treated an eight year old boy, Michael Wayne Hart ("Michael"), while on call in the emergency room of Lake Cumberland Regional Hospital ("LCRH"), in Somerset, Kentucky. Michael was brought to the emergency room by his mother, Mona Leah Howard ("Howard"). Michael had a swollen, red penis, green/yellow purulent discharge from the penis, and associated discomfort. Howard took Michael to the emergency room of LCRH, rather than to their family physician, because it was a Sunday.

Wiczkowski examined Michael with Howard being the only other person present in the examining room. The two parties present rather divergent versions of what occurred next. Debtor states that the version of the facts set forth in his

---

1. The Court notes that the Debtor asserted the Statute of Limitations as an affirmative defense in his Answer. The parties have not, however, pursued that as an issue.

brief is drawn from his communications with his client, Howard. They are the facts that were relayed to him by Howard.

### A. DEBTOR'S VERSION OF THE FACTS AS ALLEGEDLY RELAYED TO HIM BY HIS CLIENT.

According to Howard, upon examining Michael's penis, Wiczkowski questioned her as to her marital status. Wiczkowski then stated that Michael had been sexually abused and had gonorrhea. Howard allegedly represented to Debtor that Wiczkowski scolded her and asked her, "What have you done to this boy?" Wiczkowski also questioned Michael as to who had "done this" to him. Michael answered Wiczkowski that no one had touched his genitals. Howard represented that she was in shock and crying, and that her son was also crying and upset.

Wiczkowski took some swab cultures, which caused Michael a great deal of discomfort. Pursuant to the Debtor/Howard rendition of the facts, Wiczkowski treated Michael rather harshly when he cried out and complained, telling him to "shut up."

Thereafter, according to the Debtor/Howard version, Howard was confronted by a social worker, John Hail, who was accompanied by a police officer. Mr. Hail allegedly advised Howard that he had been informed by the emergency room doctors that Michael had been sexually abused and that Michael probably would not be able to go home with her. Howard's complaint filed in the Pulaski Circuit Court action states, "Wiczkowski and LCRH caused a social worker to be summoned for the purpose of removing Michael from [Howard's] custody" (Para. 12).

Subsequently, a nurse gave Michael two shots in the hip which, according to Debtor/Howard, the nurse stated were for gonorrhea.

According to Debtor/Howard, someone in the emergency room told Michael that he might not be able to go home with his mother. This allegedly caused him even more anxiety and caused him to cry.

Wiczkowski wrote two prescriptions for Michael (one for Zithromax and one for Rocephin), and told her that the test results would be sent to the family's regular physician, Dr. Betsy Reynolds. Wiczkowski also told Howard, allegedly, that all family visits with Michael would be monitored.

Michael ultimately was permitted to leave the hospital with Howard, after much discussion with the social worker.

Howard sent her sister to the pharmacy to pick-up the prescription. Pursuant to the Debtor/Howard version of the facts, the pharmacist questioned the advisability of giving the prescriptions to an eight year-old child and advised the sister to have Howard check with her family doctor. The sister's conversation with the pharmacist is not corroborated by any affidavit or deposition testimony of the sister or pharmacist.

The very next day, Monday January 3, 1994, Howard took Michael to Dr. Reynolds, the family doctor. Dr. Reynolds examined Michael and found that he had a slightly red urethra, but by that time the drainage had cleared up and the exam was otherwise normal. Dr. Reynolds reviewed lab results from tests that it appears she ran, and found them to be negative for gonorrhea and chlamydia. Dr. Reynolds diagnosed Michael's condition as urethritis, an inflammation of the opening of the penis, which is somewhat common in boys of that age, often being caused by sitting or scooting on the ground, or engaging in rough horse play. Dr. Reynolds prescribed 250 mg. of Cefotan, an antibiotic.

### B. WICZKOWSKI'S VERSION OF FACTS.

Wiczkowski's version of the facts differs in some significant ways. Debtor maintains that Wiczkowski diagnosed Michael's condition as gonorrhea. However, Wiczkowski maintains that she never entered

a diagnosis of gonorrhea; nor did she advise any person at anytime that Michael had gonorrhea. Rather, Wiczkowski maintains she entered a differential diagnosis of "R/O gonorrhea," meaning that gonorrhea needed to be ruled out.

Wiczkowski acknowledges that she made a referral to social services, as she understood was her statutory duty under K.R.S. 620.030, given the suspicion of possible abuse. She disputes Debtor's representation, however, that she caused a social worker "to be summoned for the purpose of removing Michael from [Howard's] custody." She states that any potential for removal of Michael from the family home was within the authority and control of social services, and that she at no time suggested to social services that Michael should be removed.

## C. *DEPOSITION OF DR. REYNOLDS.*

Dr. Reynolds, the family physician who examined Michael the day after his emergency room visit, was deposed on May 28, 1996, one year and four months after Debtor filed the medical negligence action against Wiczkowski, but in the course of that litigation. Both parties have cited to her deposition in support of their respective positions, Debtor asserting that it confirmed his understanding of the facts as relayed to him by his client, Howard, and Wiczkowsi asserting that it confirms Wiczkowski did nothing wrong in the course of treating Michael in the emergency room.

Dr. Reynolds testified that if a child is brought in with symptoms involving purulent discharge from the penis, a physician must rule out the possibility of venereal disease. While she acknowledged that gonorrhea is uncommon in children and that she has never in her 16 years of practice seen a case of gonorrhea in an eight year-old child, she nevertheless said that the correct approach for a child exhibiting symptoms of that nature would require testing for venereal disease. She

stated that it "would be very inappropriate not to do it."

Debtor has relied upon Dr. Reynold's testimony to support the assertions that Wiczkowski's prescribed antibiotic treatment for Michael was negligent. However, Dr. Reynolds refused to render an opinion as to the correctness of that treatment. In fact, she testified that the two antibiotics Wiczkowski prescribed, Zithromax and Rocephin, are broad spectrum antibiotics that were appropriate for the treatment of Michael's infection and in fact had "hit the target" when she, Reynolds, examined him the next day. Dr. Reynolds did testify that she would have used a smaller dosage of Zithromax and not as frequently as that which was prescribed by Wiczkowski. But, she refused to render an opinion as to the correctness of the dosage and frequency of that drug prescribed by Wiczkowski.

With regard to Wiczkowski's notification to social services, Dr. Reynolds testified that a doctor is under a reporting obligation if he or she suspects abuse. While Reynolds testified that she would personally not make such a report without a definite diagnosis of a sexually transmitted disease, and without talking to the child and considering the history of the patient, she acknowledged that she is in a different set of circumstances than an emergency room doctor. Accordingly, she declined to render an opinion as to whether it is premature for an emergency room doctor to notify social services of a suspected abuse without a definite diagnosis of venereal disease.

This demonstrates that the facts before the Court really do not support a finding one way or the other as to whether Debtor subjectively believed he had grounds to pursue the negligence action on behalf of his clients against Wiczkowski. The Court does note, however, that Dr. Reynold's deposition was not taken until well into the case; thus, Debtor could not have relied on it in any way in either filing the lawsuit or

pursuing it for the first year and four months the case was pending.

### D. *MEDICAL NEGLIGENCE CASE FILED BY DEBTOR AGAINST WICZKOWSKI.*

Debtor filed the medical negligence action against Wiczkowski on January 3, 1995. The complaint Debtor drafted asserted claims of misdiagnosis, false accusation, gross neglect of duty, improper treatment, improper referral to a social services agency, oppression, and intentional injury. It additionally alleged malice and sought punitive damages. The complaint named both the hospital and Wiczkowski as defendants in the action. Five months later, Debtor, on behalf of his clients, voluntarily dismissed the claims against the hospital with prejudice. Debtor declined Wiczkowski's requests to dismiss her from the action, however. Approximately a year and a half after the case was filed, on July 24, 1996, Debtor's associate, Brian T. Ruff ("Ruff"), sought a settlement offer of $17,-500.00 from Wiczkowski, which she declined. On December 23, 1997, Debtor requested Wiczkowski to tender an Offer of Judgment, which she also declined to make. Finally, on January 7, 1998, the morning of the trial, Debtor, by facsimile transmittal, voluntarily dismissed the entire action against Wiczkowski with prejudice and without the payment of any indemnity or settlement monies.

Debtor has admitted that he did not obtain an expert medical opinion regarding whether Wiczkowski had violated the applicable standard of care required of emergency room physicians under this particular set of circumstances, prior to filing the lawsuit. Nor did he obtain an expert medical opinion following the filing of that lawsuit or at any time during the two years the suit was pending that Wiczkowski had violated the required standard of care. He did not have a medical expert review Michael's medical records prior to filing the suit. Finally, Debtor did not consult or communicate with any pharma-ceutical manufacturer to determine the correct dosage for the medications prescribed by Wiczkowski for Michael.

Based on these assertions, Wiczkowski filed her Jefferson Circuit Court action, asserting her claims of (1) malicious prosecution, (2) abuse of process, and (3) intentional infliction of emotional distress.

### *SUMMARY JUDGMENT*

In considering a motion for summary judgment, the question presented to this Court is whether there is "no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This Court cannot try issues of fact on a Rule 56 motion, but is authorized to determine whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court held that "in filing a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden; i.e., whether a jury could reasonably find either the plaintiff proved his case by the quality or quantity of evidence required by the law or that he did not." *Id.,* 477 U.S. at 254, 106 S.Ct. 2505.

When ruling on a motion for summary judgment, the inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505. By granting summary judgment, the Court is concluding that based on the evidence upon which the nonmoving party intends to rely at trial, no reasonable fact finder could return a verdict for the nonmoving party. *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985).

The moving party carries the initial burden of proof by informing the Court of the basis of its motion, and by identifying portions of the record which highlight the

absence of genuine factual issues. Once the moving party has produced such evidence, the nonmoving party must then direct the Court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. In other words, the nonmoving party must come forward with evidence establishing that it has a viable cause of action. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *First National Bank v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

In this case, the Court finds that with regard to Wiczkowski's § 523(a)(6) claim, there are material facts in dispute and neither party is entitled to judgment as a matter of law at this juncture. The Cross–Motions are premature and will both be overruled for the reasons set forth below.

With regard to Debtor's Cross–Claim, the Court has determined for the reasons below that the material facts are not in dispute and Wiczkowski is entitled to judgment as a matter of law, as the Court finds she has not violated the automatic stay. Accordingly, Summary Judgment will be entered on her behalf.

### LEGAL DISCUSSION

#### I. § 523(a)(6).

Wiczkowski states that "she is not before this Court to fully litigate her claims against Howes [the Debtor]" (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment as to Plaintiff's Claims at p. 3). Wiczkowski states her intent is to litigate her claims in Jefferson Circuit Court in her presently pending action. She states that "she is before this Court for the sole purpose of litigating the issue of the dischargeability of her claims against Howes [the Debtor] and the issues related to Howes' Counterclaim" (*Id.*).

Accordingly, this Court begins its analysis with a review of 11 U.S.C. § 523(a)(6),

the Bankruptcy Code Section under which Wiczkowski seeks to have her claims declared nondischargeable. That Section carves out an exception to the dischargeability of debts. It reads:

> (1) A Discharge under section 727...of this title does not discharge an individual debtor from any debt—
>
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

Thus, the plain language of the statute requires that the injury be *both* willful and malicious to render the debt nondischargeable.

The United States Supreme Court has analyzed the meaning of and requirements imposed by this language in the relatively recent decision of *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). In that decision, the Supreme Court addressed what has become the pivotal question concerning the scope of the "willful and malicious injury" exception: Whether the scope of § 523(a)(6) encompasses "acts, done intentionally, that cause injury ... or only acts done with the actual intent to cause injury." *Id.* at 61, 118 S.Ct. at 976; *In re Markowitz,* 190 F.3d 455, 463 (6th Cir. 1999). The Supreme Court concluded that "willful and malicious injury" requires a "deliberate and *intentional injury.*" *Geiger,* 523 U.S. at 61–62, 118 S.Ct. at 977. "Only acts done with the intent to cause injury—and not merely acts done intentionally—can cause willful and malicious injury." *Markowitz,* 190 F.3d at 463; *Geiger,* 523 U.S. at 61–62, 118 S.Ct. at 977; *In re Abbo,* 168 F.3d 930 (6th Cir.1999); *In re Bullock–Williams,* 220 B.R. 345 (6th Cir. BAP 1998). A deliberate or intentional *act* that leads to injury is not sufficient to meet the requirement. *Geiger,* 57 at 61–62, 118 S.Ct. at 977 (emphasis added); *Markowitz,* 190 F.3d at 464; *Abbo,* 168 F.3d at 930. The debtor must have *intended the consequences* of the act, not

merely the act itself. *Geiger*, 523 U.S. at 61–62, 118 S.Ct. at 977 (emphasis added).

The Supreme Court reached that holding by carefully analyzing the language used in § 523(a)(6). The Court held that "willful" means "voluntary," "intentional," or "deliberate." *Id.*, 523 U.S. at 61 n. 3, 118 S.Ct. at 977 n. 3. The Court further found that the word "willful" modifies the word "injury." *Id.* Thus, nondischargeability requires a deliberate or intentional injury, and not merely a deliberate or intentional act that leads to injury. *Id.*; *Markowitz*, 190 F.3d at 464. Had Congress meant to include unintentionally inflicted injuries within the scope of § 523(a)(6), it could have incorporated such language as "willful acts that lead to injury," or added "reckless" and/or "negligent" to modify "injury." *Markowitz*, 190 F.3d at 464.

■ The Sixth Circuit has extended the scope of § 523(a)(6) somewhat beyond the limited interpretation established by the Supreme Court in *Geiger*. *Id.* The Sixth Circuit has determined that "the (a)(6) formulation triggers in the lawyer's mind the category of 'intentional torts,' as distinguished from negligent or reckless torts." *Id.* The Sixth Circuit then examined the Restatement (Second) of Torts' definition of "intentional torts." *Id.* "The Restatement defines intentional torts as those motivated by a desire to inflict injury or those substantially certain to result in injury." *Id.* Unfortunately, the Supreme Court, while citing to the Restatement (Second)'s definition, "neither expressly adopted nor quoted that portion of the Restatement discussing 'substantially certain' consequences." *Id.* Nevertheless, the Sixth Circuit has extended the *Geiger* holding, based on the Supreme Court's language and analysis in that decision, to coincide with the Restatement (Second)'s definition of "intentional torts." *Id.* The Sixth Circuit has accordingly held that § 523(a)(6) encompasses injuries where "the actor desires to cause consequences of his act, or . . . believes that the consequences are

substantially certain to result from it." *Id.* (*Citing* Restatement (Second) of Torts § 8A, at 15 (1964)). Thus, the creditor must demonstrate that the debtor either (1) intended to cause injury to the creditor, or (2) engaged in an intentional act from which the creditor believed injury would be substantially certain to result.

In the case at bar, Wiczkowski has asserted three causes of action against Debtor in State Court: (1) a claim for malicious prosecution, (2) a claim for abuse of process, and (3) a claim for intentional infliction of emotional distress. These claims have not been fully litigated, but are still pending in the State Court proceeding which has been stayed by this bankruptcy action. While there is some overlap of the elements necessary to support these claims with the elements necessary to support Wickowski's § 523(a)(6) nondischargeability cause of action, the elements are not identical. Nor have the elements of the three State Court claims even been judicially determined or established. The focus of *this Court* is § 523(a)(6), and the elements necessary to support Wiczkowski's nondischargeability claim under that section. The purpose of *this* adversary proceeding is to determine whether Wiczkowski has claims that are nondischargeable. Thus, in this Court, Wiczkowski must prove that Debtor caused her a "willful and malicious injury;" i.e., that Debtor intended to injure her or engaged in an intentional act from which he believed injury would be substantially certain to result. *Geiger*, 523 U.S. at 61–62, 118 S.Ct. at 977; *Markowitz*, 190 F.3d at 464.

The Court finds that the undisputed facts in the record at this juncture simply do not support such a finding. As grounds for the three State Court claims, Wiczkowski asserts that Debtor filed and continued the Pulaski County medical negligence case against her without engaging in a reasonable inquiry and investigation and without *obtaining an expert opinion* to support the claims asserted against Wiczkowski in that action. At the outset, the Court

notes that each side has presented varying versions of the material facts. As Wiczkowski's asserted claims are factually based, they basically boil down to Debtor's clients' version of the facts, which Debtor has adopted, versus Wiczkowski's version.

 Wiczkowski asserts that Debtor filed the Pulaski County medical negligence action against her "for the sole purpose of injuring Wiczkowski's reputation and extorting a monetary settlement and an attorney's fee" (Plaintiff's Response to Defendant's Motion for Summary Judgment as to Plaintiff's Claims at p. 12). The Court finds that the undisputed facts simply do not support this assertion. It appears Debtor filed and pursued the medical negligence suit on behalf of his clients, based upon the facts supplied to him by those clients. It is true that Debtor may not have investigated or inquired into the facts to the extent that would have been professionally required of him, though the Court refrains from reaching such a finding at this time. Debtor may have even continued the lawsuit once it became apparent to him that there were not sufficient grounds to support his burden of proof, a finding which the Court again refrains from making at this time. However, Debtor's *motivation* for doing so is not supported by facts in the record. It is conceivable that Debtor truly believed and stood behind his clients' version of the facts and hoped to eventually obtain the expert testimony and other supporting evidence needed. Thus, while the facts may prove to support a finding of negligence, or perhaps even recklessness, on Debtor's behalf in filing and pursuing the medical negligence action against Wiczkowski, they simply do not in and of themselves support a finding that Debtor intended to harm Wiczkowski. The facts bearing on Debtor's state of mind and motivation have simply not been developed at this juncture.

Finally, the Court notes that Wiczkowski relies on the Sixth Circuit case *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987), *overruled* 190 F.3d 455 (1999). Wiczkowski cites *Perkins* as setting forth the appropriate standard to be followed in this case. *Perkins* defined "willful and malicious injury" as being "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse." *Id.* at 394. Under the Supreme Court's *Geiger* decision, that is no longer the standard. In fact, *Perkins* has now been expressly overruled by the Sixth Circuit. *See Markowitz*, 190 F.3d at 465.

In summation, this matter as it relates to Wiczkowski's § 523(a)(6) claim is not ripe for summary judgment. The material facts are in dispute and neither party is entitled to a judgment as a matter of law.

With regard to Wiczkowski's three State Court claims—(1) malicious prosecution claim, (2) abuse of process claim, and (3) intentional infliction of emotional distress—they will be remanded back to State Court for a determination.

## II. *THE AUTOMATIC STAY*.

 Debtor has filed a Counter–Claim in this action against Wiczkowski for violation of the § 362(a) automatic stay provisions of the Bankruptcy Code. It is undisputed that at the time Wiczkowski filed her Jefferson Circuit Court action against Debtor a discharge had already been entered in Debtor's bankruptcy case more than seven months earlier.

Debtor filed for bankruptcy on May 21, 1998. A discharge was subsequently entered on September 9, 1998. Wiczkowski received no notice of that bankruptcy, as she was not named as a potential creditor and not included on the schedules. Debtor simply did not anticipate that Wiczkowski would bring a State Court action against him. Having no notice of the bankruptcy, Wiczkowski filed the State Court action against Debtor on January 4, 1999. Debtor did not move to enjoin those proceedings or apprize Wiczkowski of the bankruptcy at that time. On March 3, 1999, Wiczkowski served Debtor with discovery

requests. Debtor then waited four full weeks before moving the Bankruptcy Court to reopen his Chapter 7 case to amend his schedules to add Wiczkowski as a creditor. The Bankruptcy Court sent out a Notice of the Motion, giving interested parties 20 days to file any objections. That was the first notice of the bankruptcy given to Wiczkowski. Shortly thereafter, on April 9, 1999, Debtor's counsel additionally sent Wiczkowski's counsel a letter to advise them of the bankruptcy.

It is Wiczkowski's pursuance of the State Court litigation that occurred after that point that Debtor asserts as grounds for his Counter–Claim for violation of the automatic stay. On April 15, 1999, Wiczkowski filed a Motion to Compel discovery in the Jefferson Circuit Court action, and a hearing was conducted in that proceeding on April 19, 1999. The Motion to Compel was overruled, and it appears that the action was stayed at that time.

Debtor was ultimately permitted to amend his Bankruptcy Schedules to add Wiczkowski, on May 21, 1999.

■■■ Debtor asserts that Wiczkowski violated the § 362(a) automatic stay provisions by filing the Motion to Compel and litigating that matter in the State Court after having notice of the Bankruptcy action and Debtor's Motion to Reopen. The Court has thoroughly reviewed § 362, along with the case law construing the automatic stay provisions. It is clear that under § 362(c) the automatic stay is not unlimited in its duration, but *terminates upon the earliest of three events:* (1) the closing of the case; (2) the dismissal of the case; or (3) the entry or denial of a discharge. *In re Sims,* 31 B.R. 473, 474 (Bankr.W.D.Ky.1983); *In re Martin,* 162 B.R. 710, 715 (Bankr.C.D.Ill.1993); *In re Woodside,* 161 B.R. 969, 970 (Bankr. S.D.Ill.1994); *In re Walker,* 151 B.R. 1006, 1008 (Bankr.E.D.Ark.1993). Once a discharge is entered, "the permanent injunction of § 524 replaces the automatic stay of § 362 and prevents creditors from ever collecting a *discharged* debt." *Martin,* 162 B.R. at 715 (emphasis added).

In this case, the discharge was entered on September 8, 1998, seven months before Wiczkowski's complained of conduct, consisting of her filing of the Motion to Compel discovery on April 15, 1999, and her litigation of that matter on April 19, 1999, in a hearing before the State Court. Thus, the § 362 automatic stay was simply no longer in effect on that date.

■■■ Debtor has not requested sanctions for any violations of the § 524 permanent injunction. The Court notes that § 524 only applies to *discharged* debts and the dischargeability of Wiczkowski's claim has not at this time yet been determined. Thus, sanctions under § 524 are not appropriate, either.

Accordingly, the Court finds from the undisputed facts that Wiczkowski is entitled to a judgment as a matter of law on Debtor's Counter–Claim. Consequently, Wiczkowski's Motion for Summary Judgment on Debtor's Counter–Claim will be sustained and Debtor's Cross–Motion for Summary Judgment will be overruled.

### III. *DEBTOR'S PRETRIAL MOTIONS.*

Debtor has filed two pretrial motions: (1) A Motion to Allow Summary Judgment Memorandum in Lieu of Trial Brief; and (2) an Objection to Plaintiff's Use of Witnesses and Motion to Strike. The basis of the second Motion is that Wiczkowski failed to file her Witness List in a timely manner prior to the previously scheduled trial in this matter. The Court notes that the trial was continued, pending resolution of the Summary Judgment Motions.

■■■ With regard to the first Motion, the Court recognizes that the Memoranda in Support of the various Cross–Motions for Summary Judgment fully set forth the facts and issues involved in this case. Nothing further would be accomplished by the allowance of additional trial briefs. Accordingly, the Motion will be granted.

With regard to Defendant's Objection to Witnesses and Motion to Strike, the Court finds the matter to be moot. If the state Court renders a judgment against Debtor, this Court will assign a new trial date to resolve the § 523(a)(6) issues. Thus, new pre-trial compliance deadlines will apply. Defendant's Objection and Motion to Strike will, accordingly, be denied.

### CONCLUSION

For the above-stated reasons, this Court by separate Order will overrule both parties' Cross–Motions for Summary Judgment on Wiczkowski's § 523(a)(6) claim, will sustain Wiczkowski's Motion for Summary Judgment on Debtor's Counter–Claim, will overrule Debtor's Cross–Motion for Summary Judgment on Debtor's Counter-claim, will sustain Debtor's Motion to Allow Summary Judgment Memorandum in Lieu of Trial Brief, and will overrule Debtor's Objection to Witnesses and Motion to Strike. Wiczkowski's State Court claims for malicious prosecution, abuse of process and intentional infliction of emotional distress shall be remanded back to State Court.